IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Civil No.: 5:20-CV-00524-FL

| | |
|---|---|
| JAMES BLACKMON, a/k/a Jimmy Andrew Underwood, by and through his GUARDIAN OF THE ESTATE, PAUL TRUETT CANADY, II, <br><br> Plaintiff, <br><br> vs. <br><br> JAMES HOLDER, in his individual capacity, ANDREW MUNDAY, in his individual capacity, and THE CITY OF RALEIGH, <br><br> Defendants. | **MEMORANDUM IN SUPPORT OF CITY OF RALEIGH'S MOTION TO DISMISS** |

This matter is before the Court on a motion to dismiss by Defendant City of Raleigh. The claims against the Defendant City of Raleigh fail to state a claim for relief in the following respects, among others:

- Plaintiff's claims are all barred by N.C. Gen. Stat. § 1-52(16), North Carolina's statute of repose.

- In the alternative, Plaintiff's direct claims under the North Carolina Constitution fail because Plaintiff has adequate state law remedies to address the same alleged injuries.

- Plaintiff's obstruction of justice/civil conspiracy claims are barred by the intracorporate conspiracy doctrine, and a municipality cannot be a party to a civil conspiracy in any event.

Accordingly, the Defendant City's Motion should be GRANTED and the claims against it should be DISMISSED WITH PREJUDICE.

## **PROCEDURAL HISTORY**

The matter is essentially a malicious prosecution or false imprisonment lawsuit. The primary allegations are that in late October of 1983, two detectives from the Raleigh Police Department goaded

2

the Plaintiff (who was mentally ill) into giving a false confession to the murder of a female student from a local college. The Complaint alleges that Plaintiff was jailed for several years awaiting trial and subsequently entered a guilty plea to murder, for which he was imprisoned until late 2019, when the North Carolina Innocence Inquiry Commission determined that he was innocent.

According to the Complaint, Plaintiff James Blackmon was adjudicated "to be incompetent to manage his own affairs on October 11, 2019," so on November 25, 2019, the Robeson County Clerk of Court appointed a legal guardian (Paul T. Cannady, II) to serve as guardian of his estate. DE # 1, at ¶¶ 322-323. The Defendants are the City of Raleigh and two retired detectives who served in the Raleigh Police Department's Major Crimes Task Force, James Holder and Andrew Munday. *Id.* at ¶ 16.

Plaintiff's suit was filed in this Court on October 5, 2020. DE #1. The Defendant City of Raleigh executed a waiver of service, making its response to the Plaintiff's Complaint due December 5, 2020. DE #9.

Plaintiff's Complaint asserts the following claims: (a) 42 U.S.C. § 1983 claims against Holder and Munday in their individual capacity, for alleged "fabrication of evidence," using "psychologically manipulative interrogation techniques," and "malicious prosecution," purportedly in violation of Mr. Blackmon's Fourth Amendment rights (Claims I, II and III); (b) a 42 U.S.C. § 1983 claim against the City of Raleigh, alleging a failure to train, supervise and discipline its police officers (Claim IV); (c) common law civil obstruction of justice and civil conspiracy claims against all Defendants (Claim V); (d) a common law negligence claim against all Defendants (Claim VI); (e) direct claims under the North Carolina Constitution and for civil conspiracy against the City of Raleigh and Detectives Holder and Munday in their official capacities (Claims VII and VIII); and a prayer for punitive damages against Holder and Munday individually.

The matter is now before the Court on the Defendant City of Raleigh's motion to dismiss all of

Plaintiff's claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS AS ALLEGED BY PLAINTIFF

Plaintiff's Complaint is quite lengthy and contains a number of very detailed factual allegations, but the facts material to the City's motion to dismiss are very brief. As noted above, the principal allegations are that on September 29, 1979, a local college student named Helena Payton was attacked in her dormitory at St. Augustine's College in Raleigh. Ms. Payton subsequently died from her injuries. DE # 1, at ¶ 10. The case went unsolved for several years.

In February of 1983, the Raleigh Police Department received a series of tips that a patient at Dorothea Dix Hospital, a state psychiatric hospital in Raleigh, had "bragged about killing women in New York, New Jersey and Raleigh," and that James Blackmon (who was involuntarily committed to Dix Hospital at the time) fit the description of the patient. This information was passed along to Detectives Holder and Munday, who were assigned to investigate the Payton murder. *Id.* at ¶¶ 17-19.

The Complaint generally alleges that there was little evidence to link Blackmon to the crime. Blackmon's fingerprints did not match a set of latent prints from the crime scene, there was evidence that Blackmon had been arrested in New York state both in the months before and after the Payton murder, and Blackmon's medical records indicated that he suffered from "severe mental illnesses," but Holder and Munday nevertheless continued to focus their investigation on him. *Id.* at ¶¶ 20-26.

The Complaint alleges that in late October of 1983, Holder and Munday met with and questioned Blackmon multiple times over a period of several days. *See id.* at ¶¶ 31, 155-226. At some point during the series of interviews with the detectives, Blackmon indicated that the "other James Blackmon" might have been present or involved with the attack on Ms. Payton at St. Augustine's College. *See id.* at ¶¶ 200-207.

The Complaint alleges that Blackmon was subsequently arrested in December of 1983. He remained in custody awaiting trial until January of 1988, when (on the advice of his legal counsel) he

entered a guilty plea to second-degree murder on January 14, 1988. *See* DE # 1 at ¶¶ 227-235.

According to the Complaint, the North Carolina Innocence Inquiry Commission ("NCIIC") began investigating Blackmon's case in March of 2012. The NCIIC investigated the case for over six years and ultimately determined that there was sufficient evidence of Plaintiff's innocence to refer to case to a judicial panel for review. The Complaint alleges that on or about August 22, 2019, a three-judge panel concluded that Blackmon had proven that he was innocent. DE # 1, at ¶¶ 6- 9.

As noted above, the Complaint alleges that in October of 2019, Blackmon was adjudicated "to be incompetent to manage his own affairs" and on November 25, 2019, the Robeson County Clerk of Court appointed Mr. Canady to serve as Guardian of James Blackmon's Estate. DE # 1, at ¶¶ 322-323.

## **ARGUMENT**

### I. **Plaintiff's claims are barred by North Carolina's statute of repose.**

The first (and most obvious) defect in the Plaintiff's case is that all of the Defendants' alleged acts or omissions occurred long ago—more than 32 years passed between the time of the Plaintiff's guilty plea in January of 1988 and the filing of this lawsuit in October of 2020. Because of this fact, the City contends that all of the Plaintiff's claims are barred by North Carolina's ten-year statute of repose, codified in N.C. Gen. Stat. 1-52(16).

"The statute of limitations for all § 1983 claims is borrowed from the applicable state's statute of limitations for personal injury actions, even when a plaintiff's particular § 1983 claim does not involve personal injury." *Tommy Davis Constr., Inc. v. Cape Fear Pub. Util. Auth.*, 807 F.3d 62, 66-67 (4th Cir. 2015); *Wilson v. Garcia*, 471 U.S. 261, 275-80, 105 S.Ct. 1938 (1985); *Wallace v. Kato*, 549 U.S. 384, 387, 127 S.Ct. 1091 (2007). The Fourth Circuit has mandated that, in North Carolina, the three-year limitations period for personal injury actions codified in N.C. Gen. Stat. § 1-52(5) is the relevant limitations period for § 1983 claims. *Tommy Davis Constr., Inc.*, 807 F.3d at 67; *Nat'l*

*Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1162 n.2 (4th Cir. 1991). An important corollary to this rule is that federal courts are also required to apply state law rules governing tolling and repose, just as they borrow the state's statutory limitations periods. *See, e.g., Wallace*, 549 U.S. at 394 ("We have generally referred to state law for tolling rules, just as we have for the length of statutes of limitations."); *Chardon v. Fumero-Soto*, 462 U.S. 650, 655 (1983) (federal courts required to follow state law rules on limitations periods, including rules governing whether, and to what extent, limitations periods may be tolled); *Bd. of Regents of Univ. of State of N.Y. v. Tomanio,* 446 U.S. 478, 484-86, 100 S.Ct. 1790 (1980) (federal court required to apply state law rules restricting tolling of limitations period in § 1983 cases because "in general, state policies of repose cannot be said to be disfavored in federal law.").

In North Carolina, the state's three-year statutory limitation period codified in N.C. Gen. Stat. § 1-52(5) works in conjunction with the 10-year repose period codified in § 1-52(16) of the same statute, which reads as follows:

> Within three years an action --
>
> . . . .
>
> **(5)** For criminal conversation, or for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated, except as provided by G.S. 1-17(d) and (e).
>
> . . . .
>
> **(16)** Unless otherwise provided by law, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1-15(c), shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. *Except as provided in G.S. 130A-26.3 or G.S. 1-17(d) and (e), no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action*.
>
> . . . .

N.C. Gen. Stat. § 1-52 (emphasis added).

The effect of this statutory provision is that it creates a three-year statute of limitations which

6

runs from the date of accrual of a personal injury claim, but also imposes an absolute ten-year time limit, which runs from the "last act or omission of the defendant giving rise to the cause of action." *See Misenheimer v. Burris,* 360 N.C. 620, 623-25, 637 S.E.2d 173, 175-76 (2006) (construing § 1-52(16) as creating an outermost limit of ten years from the "last act or omission of the defendant," within which the three-year limitations period of § 1-52(5) runs).

In *CTS Corp v. Waldenburger*, 573 U.S. 1, 134 S.Ct. 2175 (2014), the United States Supreme Court confronted the questions of how the statute of limitations and repose contained N.C. Gen. Stat. § 1-52 should be construed in the context of a claim under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, et seq., and whether the 10-year repose period in the statute was preempted by CERCLA.[1] The Fourth Circuit had held that North Carolina's statutory repose period was preempted by CERCLA, reasoning that while 42 U.S.C. § 9658 was "ambiguous" about the issue of pre-emption, pre-emption was the favorable construction of the statute "because of CERCLA's remedial purpose." *See CTS Corp.*, 573 U.S. at 6.

The *CTS* Court reversed. The Court first explained that North Carolina's statutory limitations and repose periods, while related, worked in different fashions—limitations periods begin to run only after a claim has "accrued," while statutory repose periods generally set an "outer limit on the right to bring a civil action" which generally starts "from the date of the last culpable act or omission of the defendant." *CTS Corp.*, 573 U.S. at 8. As a result, a statute of repose can sometimes act as a bar to a claim even if the claim has not yet accrued. *CTS Corp.*, 573 U.S. at 16 ("A statute of repose, however, . . is not related to the accrual of any cause of action. . . . Rather, it mandates that there shall be no cause of action beyond a certain point, even if no cause of action has yet accrued.").

---

[1] Claims under CERCLA, like claims under 42 U.S.C. § 1983, generally borrow limitations periods from state law, but CERCLA also imposes statutorily-required tolling periods. *See* 42 U.S.C. § 9658; *see also CTS Corp.*, 573 U.S. at 10-12.

7

The *CTS* Court also explained that, unlike limitations periods, repose periods generally cannot be tolled. *CTS Corp.*, 573 U.S. at 9-10 ("under North Carolina law statutes of limitation may be tolled but statutes of repose may not."). Finally, the CTS Court rejected the Fourth Circuit's conclusion that North Carolina's statute of repose should be preempted because it interfered with CERCLA's remedial purposes. *See CTS Corp.*, 573 U.S. at 18 ("Respondents have not show that . . . statutes of repose pose an unacceptable obstacle to the attainment of CERCLA's purposes.").

In this case, there are no allegations that could be fairly construed to contend that any "act or omission" on the part of the Defendant City or any of its police officers occurred at any time subsequent to January 14, 1988, when Plaintiff allegedly entered his guilty plea. Nevertheless, Plaintiff's Complaint alleges that due to his mental incompetence, the statute of limitations for his claims was tolled until November 25, 2019, when Mr. Canady was appointed to serve as the guardian of his estate.[2] *See, e.g.,* DE # 1, at ¶¶ 322-323.

Even if the *statute of limitations* for the Plaintiff's claims was tolled, as the Defendant City explained above, the 10-year *repose period* contained in N.C. Gen. Stat. § 1-52(16) is an entirely different matter. The repose period runs from the "last act or omission of the defendant giving rise to the cause of action," *see id.*, and this period is <u>not</u> subject to tolling. *See CTS Corp.*, 573 U.S. at 9-10 ("under North Carolina law statutes of limitation may be tolled but statutes of repose may not."); *Misenheimer,* 360 N.C. at 623-24, 637 S.E.2d at 175-76; *Monson v. Paramount Homes, Inc.*, 133 N.C. App. 235, 239-41, 515 S.E.2d 445, 449 (1999). When a defendant raises the defense of limitations or repose, the burden shifts to the claimant to show that the suit was timely filed. *See, e.g., Henlajon, Inc. v. Branch Highways, Inc.*, 149 N.C. App. 329, 335, 560 S.E.2d 598, 603 (2002). In this case, Plaintiff has failed to meet this burden.

In summary, Plaintiff's state law claims are all barred by the statute of repose because suit was

---

[2] Ostensibly, the Plaintiff is contending that the limitations period is tolled pursuant to N.C. Gen. Stat. § 1-17(a), the statutory provision which covers the "disabilities" of infancy, insanity and incompetence. If this is Plaintiff's contention, it would be patently inconsistent with the text of N.C. Gen. Stat. § 1-52(16), which includes specific provisions addressing the circumstances described in § 1-17(d) and (e), but no carve-out for the disabilities described in § 1-17(a).

not filed within 10 years of the last act of any of the Defendants.  *See* N.C. Gen. Stat. § 1-52(16); *Misenheimer,* 360 N.C. at 623-24, 637 S.E.2d at 175-76; *Monson*, 133 N.C. App. At 239-41, 515 S.E.2d at 449; *see also CTS Corp.*, 573 U.S. at 8-10.  Also, because the Court is obligated to borrow not just North Carolina's limitations periods, but also its rules for tolling and repose, the Plaintiff's § 1983 claims against the Defendant City should also be dismissed as time-barred.  *See Wallace*, 549 U.S. at 394; *Chardon*, 462 U.S. at 655; *Tomanio,* 446 U.S. at 484-86.

II. **Plaintiff's direct claims under the North Carolina Constitution should be dismissed because he has "adequate state law remedies" for the same alleged injuries.**

In his Seventh and Eighth Claims for Relief, Plaintiff seeks to recover for alleged violations of his right to due process under Article I, Sections 19 and 20 of the North Carolina Constitution.  *See* DE # 1, at ¶¶ 337-342. In a nutshell, Plaintiff claims that he was wrongfully deprived of his liberty, in violation of this rights to due process under the North Carolina Constitution.  More specifically, Plaintiff alleges that Detective Holder and Detective Munday caused him "to make false inculpatory statements and plead guilty to the murder of Helena Payton," and generally "caused the fabrication of evidence," which lead to his arrest, guilty plea and incarceration.  *See id*. at ¶ 339.

Plaintiffs' direct claims under the North Carolina Constitution must be dismissed because he has "adequate state remedies" for the alleged violations of these constitutional rights.  Direct claims under the North Carolina Constitution "are permitted *only* in the absence of an adequate state remedy, and where an adequate state remedy exists, those direct constitutional claims must be dismissed."  *Wilcox v. City of Asheville*, 222 N.C. App. 285, 298, 730 S.E.2d 226, 236 (2012) (emphasis in original and internal quotations omitted); *accord Copper v. Denlinger*, 363 N.C. 784, 788, 688 S.E.2d 426, 428 (2010); *Corum v. University of North Carolina*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992); *Debaun v. Kuszaj*, 238 N.C. App. 36, 38, 767 S.E.2d 353, 355 (2014); *Rousselo v. Starling*, 128 N.C. App. 439, 447, 495 S.E.2d 725, 731 (1998).

The plaintiff has the burden of sufficiently pleading the non-existence of any adequate state law remedy. *Copper*, 363 N.C. at 788, 688 S.E.2d at 428. If a plaintiff can assert an individual capacity claim against a government official for the wrong at issue, that claim provides an "adequate state remedy" that precludes a direct claim under the North Carolina Constitution. *Wilcox*, 222 N.C. App. at 299-300, 730 S.E.2d at 236-37 ("Wilcox has a remedy alternative to her state constitutional claims in that she may pursue her common law claims against the Individual Defendants in the in their individual capacities."); *Debaun*, 238 N.C. App. at 39, 767 S.E.2d at 356-57 (holding that the "possibility" of an individual capacity claim provides an "adequate state remedy" that bars a direct claim under the N.C. Constitution).

In this case, the Plaintiff claims that his rights under Article I, Sections 19 and 20 of the North Carolina Constitution were violated when was wrongfully arrested, charged and subsequently imprisoned. North Carolina courts have repeatedly held that claims for false arrest, false imprisonment or malicious prosecution constitute "adequate state law remedies" that bar direct claims under Article I, Sections 19 and 20 of the North Carolina Constitution. *See, e.g., Rousselo*, 128 N.C. App. at 447, 495 S.E.2d at 730 (claim for false imprisonment provides adequate state law remedy for alleged violation of right to be free from "unreasonable detention, search and seizure" in violation of Article I, Sections 19 and 20 of N.C. Constitution); *Davis v. Southern Pines*, 116 N.C. App. 663, 675-76, 449 S.E.2d 240, 248 (1994) (false imprisonment or false arrest claim was adequate remedy for alleged violation of right to be "free from unlawful restraint," in violation of Sections 19 and 20); *Alt v. Parker*, 112 N.C. App. 307, 318-19, 435 S.E.2d 773, 779 (1993) (common law claim for false imprisonment provides adequate remedy for alleged violation of right to be free unlawful restraint); *Haynes v. City of Durham*, No. 1:12-cv-1090, 2016 U.S. Dist. LEXIS 14615, at \*\*23-25 (M.D.N.C. Feb. 5, 2016) (claim for malicious prosecution and obstruction of justice against officers individually provided adequate state law remedy to preclude direct claim under Article I, Sections 19 and 20 of N.C.

Constitution).

In summary, there are a plethora of potential common law claims that would constitute adequate state law remedies sufficient to preclude Plaintiff from asserting direct claims under the North Carolina Constitution in this case. Accordingly, Plaintiff's direct claims under the North Carolina Constitution must be dismissed. *Wilcox*, 222 N.C. App. at 298, 730 S.E.2d 226 at 236; *Copper*, 363 N.C. at 788, 688 S.E.2d at 428 (2010); *Corum*, 330 N.C. at 782, 413 S.E.2d at 289; *Debaun*, 238 N.C. App. at 38, 767 S.E.2d at 355; *Rousselo*, 128 N.C. App. at 447, 495 S.E.2d at 731.

### III. Plaintiff's Obstruction of Justice/Civil Conspiracy claims fail because a municipality cannot be a party to a conspiracy and the claims are barred by the intracorporate conspiracy doctrine.

Finally, Plaintiff has asserted common law claims against the Defendant City of Raleigh for obstruction of justice and civil conspiracy. *See* DE # 1, at 319-327. The Complaint specifically alleges that Holder and Munday conspired to obstruct justice and were acting "in the scope of their employment as Raleigh Police Officers . . . ." DE # 1, at ¶ 327. These claims must be dismissed for two related reasons—the claims are barred by the intracorporate conspiracy doctrine and a municipal corporation cannot be a party to a civil conspiracy.

It is axiomatic that a conspiracy requires *two or more* actors, and this requirement is not met when all of the alleged "conspirators" are a single corporation, or are all employees working for the same entity: "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that acts of the agent are acts of the corporation." *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1987). This doctrine is known as the "intracorporate conspiracy doctrine." *Id.* at 1251.

Where all of the alleged conspirators are employees of a single corporate entity, the "plurality of actors" requirement is not met. *Buschi*, 775 F.2d at 1251-54; *Iglesias v. Wolford*, 539 F. Supp.2d 831, 835-37 (2008); *Guthrie v. Blue Ridge Sav. Bank*, 114 F.Supp.2d 431, 435-36 (W.D.N.C. 2000);

11

*Turner v. Randolph County*, 912 F.Supp. 182, 186-87 (M.D.N.C. 1995); *accord Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 777, 104 S.Ct. 2731 (1984) (holding that a corporation and its wholly-owned subsidiary are incapable of conspiring together). The Fourth Circuit has specifically held that the intracorporate conspiracy doctrine bars claims that members of a police department conspired amongst themselves. *See Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1371 (4th Cir. 1989) ("The Police Commissioner as head of the Department cannot be held to have entered into a conspiracy with the Department. A department cannot conspire with itself.") (citing *Buschi*, 775 F.2d at 1251-53).

A plaintiff cannot avoid this rule by simply suing the defendant-employees in their individual capacities. *Buschi*, 775 F.2d at 1252 ("Nor is the immunity granted under this doctrine to the agents and the corporation destroyed because the agents are sued individually."); *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 353 (4th Cir. 2013) ("suing the agents individually does not destroy the immunity granted under the doctrine."); *Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 702-03 (4th Cir. 1991) (en banc) (individual agents of corporation incapable of conspiring while acting in the course of official duties); *Iglesias*, 539 F.Supp.2d at 836 ("Moreover, even where a municipality's employees are sued in their personal capacities, there can be no conspiracy if the actions complained of were taken in the course of their official duties."); *Guthrie*, 114 F.Supp.2d at 435-36 (denying plaintiff's motion to amend to name individual defendants because the amendment would be futile in light of the intracorporate conspiracy doctrine); *Turner*, 912 F.Supp. at 186-87.

Additionally, the City of Raleigh (and Detectives Holder and Munday in their official capacities) cannot be sued for conspiracy for a more basic reason: law recognizes that the City, as a municipality, cannot be a party to a civil conspiracy. *Houpe v. City of Statesville*, 128 N.C. App. 334, 351, 497 S.E.2d 82, 93-94 (1998) ("a municipality as such may not ordinarily be a party to a conspiracy."); *Iglesias*, 539 F.Supp.2d at 835-36. The *Houpe* court specifically held that because an

official capacity claim was essentially a claim against the municipality itself, a plaintiff could not maintain a conspiracy claim against city officials in their official capacities. *See id*. In the *Iglesias* case, Judge Dever of this Court followed the rule from *Houpe* and held that North Carolina law precluded conspiracy claims against municipalities. *Iglesias*, 539 F.Supp.2d at 835-36.

In summary, because all of the alleged conspirators were employed by the City of Raleigh during the time of the alleged "conspiracy," there can be no civil conspiracy claim. Further, a civil conspiracy claim against a municipality and/or the Defendants in their official capacity also fails to state a claim. Plaintiff's obstruction of justice/civil conspiracy claims should be dismissed in their entirety.

## **CONCLUSION**

For the above-stated reasons, among others, the Defendant City of Raleigh's motion to dismiss should be GRANTED and the Plaintiff's claims should be DISMISSED WITH PREJUDICE.

This the 4th day of December, 2020.

CROSSLEY McINTOSH COLLIER HANLEY & EDES, PLLC

/s/ Norwood P. Blanchard, III
Norwood P. Blanchard, III
State Bar No. 26470
5002 Randall Parkway
Wilmington, NC 28403
P: 910-762-9711
F: 910-256-0310
norwood@cmclawfirm.com

Dorothy V. Kibler
Deputy City Attorney
P.O. Box 590
Raleigh, NC 27602
*Attorneys for City of Raleigh*

# CERTIFICATE OF SERVICE

I certify that on December 4, 2020, I electronically filed the foregoing **Memorandum in Support of City of Raleigh's Motion to Dismiss** the Clerk of Court using the CM/ECF system, which will electronically serve counsel for all parties as follows:

    David S. Rudolf
    Sonya Pfeiffer
    RUDOLPH WIDENHOUSE
    225 E. Worthington Ave.
    Charlotte, NC 28203
    dsrudolph@rudolphwidenhouse.com
    spfeiffer@rudolphwidenhouse.com

    Sonny S. Haynes
    Rachel E. Keen
    WOMBLE BOND DICKINSON
    One West Fourth Street
    Winston-Salem, NC 27101
    Sonny.Haynes@wbd-us.com
    Rachel.Keen@wbd-us.com

    Jason Benton
    PARKER POE ADAMS & BERNSTEIN LLP
    620 S. Tryon Street, Ste. 800
    Charlotte, NC 28202
    jasonbenton@parkerpoe.com

    Dorothy V. Kibler
    Deputy City Attorney
    P.O. Box 590
    Raleigh, NC 27602
    *Attorney for Defendant City of Raleigh*

This the 4th day of December, 2020.

                CROSSLEY MCINTOSH COLLIER HANLEY & EDES, PLLC

                            /s/ Norwood P. Blanchard, III
                            Norwood P. Blanchard, III