IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-cv-524-FL

| | |
|---|---|
| JAMES BLACKMON, a/k/a Jimmy Andrew Underwood, by and through his GUARDIAN OF THE ESTATE, PAUL TRUETT CANADY, II, <br><br> Plaintiff, <br><br> v. <br><br> JAMES HOLDER, in his individual capacity, ANDREW MUNDAY, in his individual capacity, and the CITY OF RALEIGH, <br><br> Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT ANDREW MUNDAY** |

NOW COMES Defendant Andrew Munday, in his individual capacity, by and through counsel, pursuant to E.D.N.C. Local Civil Rules 7.1(e) and 7.2(a), and submits this Memorandum of Law in support of his Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**STATEMENT OF THE CASE**

Plaintiff initiated this lawsuit by filing a Complaint and Demand for Jury Trial ("Complaint") with this Court on October 5, 2020. [D.E. 1]. Plaintiff named as defendants the City of Raleigh, James Holder, and Andrew Munday. Detective Munday is a retired police officer who served in the Raleigh Police Department's Major Crimes Task Force. *Id.* at ¶ 16.

Plaintiff's Complaint asserts the following claims against Detective Munday:

(1) "Fabrication of False Inculpatory Evidence" in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution (Count I);

1

(2) "Use of Psychologically Manipulative Interrogation Techniques" in violation of Plaintiff's substantive due process rights under the Fourteenth Amendment (Count II);

(3) "Malicious Prosecution and Seizure" in violation of the Fourth and Fourteenth Amendments (Count III);

(4) "Civil Obstruction of Justice and Civil Conspiracy" (Count V);

(5) Negligence (Count VI); and

(6) Claims for "Due Process violation under Article I, Sections 19 and 20 of the North Carolina Constitution and Civil Conspiracy" alleged "in the alternative" (Counts VII – VIII).

Plaintiff's primary complaint is that in late October 1983, Detectives Holder and Munday of the Raleigh Police Department exploited Plaintiff's mental illness and intellectual disability in order to elicit a false confession to the murder of a female student from a local college. According to the Complaint, Plaintiff was confined for several years awaiting trial before subsequently entering a guilty plea to murder. In 2019, the North Carolina Innocence Inquiry Commission ("NCIIC") made a determination that Plaintiff was innocent of the murder.

## STATEMENT OF FACTS

On September 29, 1979, a student named Helena Payton was attacked in the bathroom of her dormitory at St. Augustine's College in Raleigh, North Carolina. [D.E. 1, ¶ 10]. A little over a month after the attack, Ms. Payton died from her injuries. *Id.* The case went unsolved for several years. *Id.* at ¶ 15.

In February 1983, the Raleigh Police Department received anonymous tips that a patient at Dorothea Dix Hospital, a state psychiatric hospital in Raleigh, had "bragged about killing women in New York, New Jersey, and Raleigh," and that Plaintiff James Blackmon (who was involuntarily committed to Dix Hospital at the time) fit the description provided. *Id.* at ¶¶ 17-19.

In late October 1983, Detectives Holder and Munday met with and questioned Plaintiff multiple times over a period of several days. *Id.* at ¶¶ 31. During the series of interviews with the detectives, Plaintiff indicated that the "other James Blackmon" might have been present or involved with the attack on Ms. Payton at St. Augustine's College. *Id.* at ¶¶ 200-07. On October 26, 1983, Detectives Holder and Munday took Plaintiff to the dorm where Ms. Payton was attacked. *Id.* at ¶ 190. On the sixth floor of the dorm, Detective Holder asked Plaintiff to look into the bathroom and see if it looked familiar to him. *Id.* at 192; NCIIC Hearing, Tr. Vol. II at 340.[1]

> [Plaintiff] went into the bathroom, walked past the bathroom stalls until he got to the last stall.
>
> Plaintiff turned to his right facing the stall, pushed open the stall door, and said, 'This is where it happened.'
>
> [Detective] Holder asked [Plaintiff], 'What happened, James? Where were you?'
>
> Plaintiff said, 'I was here and she was there.' "

NCIIC Hearing, Tr. Vol. II at 340.

Plaintiff was later arrested in December 1983. *Id.* at ¶ 227. He remained in custody awaiting trial until, on the advice of his legal counsel, he entered a guilty plea to second-degree murder on January 14, 1988. *Id.* at ¶¶ 227-234.

The NCIIC began investigating Plaintiff's case in March 2012. *Id.* at ¶ 6. Over a six-and-a-half-year period, NCIIC staff members conducted an investigation culminating in a three-

---

[1] Ordinarily, a court may not consider matters outside the pleadings without converting a Rule 12(b)(6) or 12(c) motion to a motion for summary judgment. FED. R. CIV. P. 12(d). However, documents incorporated in the complaint by reference are deemed part of the pleadings and therefore may be considered without converting a Rule 12 motion. *Jacobs v. Dees-Dees Law Firm*, No. 5:17-CV-104-FL, 2017 WL 6541507, at *4 (E.D.N.C. Dec. 21, 2017) (Flanagan, J.) (citing *Pueschel v. United States*, 369 F.3d 345, 353 n.3 (4th Cir. 2004)). Plaintiff's Complaint incorporates and specifically relies on the three-volume transcript of the NCIIC's hearing. *See, e.g.*, Compl. ¶¶ 40, 215.

day hearing before the Innocence Commission from November 14-16, 2018. *Id.* at ¶ 7. According to Plaintiff's Complaint, on or about August 22, 2019, a three-judge panel concluded that Plaintiff had proven that he was innocent of Helena Payton's murder. *Id.* at ¶ 8-9.

## **ARGUMENT**

I.  **Standard of Review.**

In a motion to dismiss pursuant to Rule 12(b)(1) of Federal Rules of Civil Procedure, the party asserting subject matter jurisdiction has the burden to prove its existence, regardless of the allegations in his complaint. *See, e.g., KVOS v. Associated Press*, 299 U.S. 269, 278 (1936). A motion to dismiss for lack of jurisdiction may test the legal sufficiency of the allegations to support jurisdiction, or the motion may contest the facts alleged to support jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). When determining the existence of subject matter jurisdiction, a court may consider the pleadings as evidence and may also look to evidence outside the pleadings without treating the inquiry as one for summary judgment. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

The federal district courts possess broad subject matter jurisdiction; they may even be empowered to adjudicate cases concurrently with the state courts. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). "The jurisdiction possessed by the District Courts is strictly original[,]" however, not appellate. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). With few exceptions, such as their power to issue writs of *habeas corpus*, district courts are without power to review decisions rendered by state courts. *See Exxon Mobil*, 125 S. Ct. at 1521 ("Appellate jurisdiction to reverse or modify a state-court judgment is lodged … exclusively in [the Supreme] Court."). Federal jurisdiction over appeals from state courts is vested exclusively in the United States Supreme Court by 28 U.S.C. § 1257. The *Rooker-*

*Feldman* doctrine is a jurisdictional bar properly considered under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See generally Livingston v. N. Carolina State Bar*, 364 F. Supp. 3d 587, 593 (E.D.N.C. 2019) (Dever, J.); *Broughton v. Aldridge*, No. 5:10-CV-231-FL, 2010 WL 4809036, at *4 (E.D.N.C. Nov. 17, 2010) (Flanagan, J.), *aff'd*, 445 Fed. Appx. 656 (4th Cir. 2011), *aff'd*, 445 Fed. Appx. 656 (4th Cir. 2011).

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted when it clearly appears that the plaintiff can prove no set of facts to support a claim which would entitle him to the requested relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all well-pleaded allegations are presumed to be true, and the Court views the allegations in the light most favorable to the plaintiff. *Id.* However, the Court "need not accept the legal conclusions as drawn from the facts" and "need not accept, as true, unwarranted inferences, unreasonable conclusions or arguments." *See Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006).

**II.     Plaintiff's claims are barred by the applicable statute of repose.**

Under North Carolina law, the three-year statutory limitations period in N.C. Gen. Stat. § 1-52(5) works in conjunction with the 10-year repose period codified in § 1-52(16) of the same statute:

> Within three years an action --
>
> …
>
> (5) For criminal conversation, or for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated, except as provided by G.S. 1-17(d) and (e).
>
> …

5

> (16) Unless otherwise provided by law, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1-15(c), shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. *Except as provided in G.S. 130A-26.3 or G.S. 1-17(d) and (e), no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.*

N.C. Gen. Stat. §§ 1-52(5), (16) (emphasis added).

The effect of these statutory provisions is that, read together, they create a three-year statute of limitations which runs from the date of accrual of a personal injury claim, but also impose an absolute ten-year time limit, which runs from the "last act or omission of the defendant giving rise to the cause of action." *See Misenheimer v. Burris*, 360 N.C. 620, 623-25, 637 S.E.2d 173, 175-76 (2006) (explaining that Section 1-52(16) creates an outermost limit of ten years from the "last act or omission of the defendant," within which the three-year limitations period of § 1-52(5) runs).

The three-year statute of limitations as set forth in § 1-52(5) also applies to 42 U.S.C. § 1983 actions brought in the North Carolina court system. *Nat'l. Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1162 n.2 (4th Cir. 1991), *cert. denied*, 504 U.S. 931 (1992) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985), and holding "the three-year period for personal injury action as set forth in section 1-52(5) is the North Carolina limitations period applicable to section 1983 actions.").

Congress has not made the specific choice of a section 1983 statute of repose. Accordingly, both the higher courts and Congress mandate that this Court choose the most analogous state statute to the federal action. *Sheets v. Lindsey*, 783 F. Supp. 577, 581 (D. Utah 1991), *aff'd sub nom. Sheets v. Salt Lake Cty.*, 45 F.3d 1383 (10th Cir. 1995). Thus, federal courts are required to apply state law rules governing tolling *and* repose, just as they

borrow the state's statutory limitations periods. Specifically, federal courts have borrowed state statutes of repose to bar claims arising under the Reconstruction-Era Civil Rights Acts. *See Cross v. Lucius*, 713 F.2d 153 (5th Cir. 1983) (applying Louisiana's thirty-year statute of prescription to bar claims under 42 U.S.C. §§ 1983 and 1985); *Montgomery v. University of Chicago*, 776 F. Supp. 342, 347 (N.D. Ill. 1991) (applying four-year statute of repose to bar a section 1983 claim). *See also Wallace v. Kato*, 549 U.S. 384, 394 (2007) ("We have generally referred to state law for tolling rules, just as we have for the length of statutes of limitations."); *Hardin v. Straub*, 490 U.S. 536, 543-44, (1989) (state tolling statutes apply to section 1983 claims); *Chardon v. Fumero-Soto*, 462 U.S. 650, 655 (1983) (federal courts required to follow state law rules on limitations periods, including rules governing whether, and to what extent, limitations periods may be tolled); *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 484-86 (1980) (federal court required to apply state law rules restricting tolling of limitations period in section 1983 cases because "in general, state policies of repose cannot be said to be disfavored in federal law.").

Statutes of repose afford plaintiffs what legislature deems a reasonable time to bring claims and also protect defendants and courts from dealing with cases in which the search for truth may be seriously impaired by loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.

In the case before this Court, Plaintiff's Complaint contains no allegations that any "act or omission" on the part of Detective Munday occurred at any time after January 14, 1988, when Plaintiff alleges he entered a guilty plea. Rather, Plaintiff's Complaint alleges that due to his mental incompetence, the state statute of limitations for his claims was tolled until November 25, 2019, when Mr. Canady was appointed to serve as the guardian of his estate. [D.E. 1, at ¶¶ 322-

323].[2]

Even assuming *arguendo* that the statute of limitations for Plaintiff's claims was tolled (which Detective Munday denies), the 10-year statute of repose in N.C. Gen. Stat. § 1-52(16) bars his state law claims. Ordinary statutes of limitation are clearly procedural, affecting only the remedy directly and not the right to recover. *See Williams v. Thompson*, 227 N.C. 166, 41 S.E.2d 359 (1947); *Sayer v. Henderson*, 225 N.C. 642, 35 S.E.2d 875 (1945). A statute of repose, on the other hand, acts as a condition precedent to the action itself. *Bolick v. American Barmag Corp.*, 306 N.C. 364, 293 S.E.2d 415 (1982). Unlike a limitation provision which merely makes a claim unenforceable, a condition precedent establishes a time period in which suit must be brought in order for the cause of action to be recognized. If the action is not brought within the specified period, the plaintiff "literally has no cause of action. The harm that has been done is *damnum absque injuria*—a wrong for which the law affords no redress." *Boudreau v. Baughman*, 322 N.C. 331, 341, 368 S.E.2d 849, 857 (1988). North Carolina courts have previously characterized the statute of repose as a substantive definition of rights rather than a procedural limitation on the remedy used to enforce rights. *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E.2d 868 (1983); *Bolick*, 306 N.C. 364, 293 S.E.2d 415.

A statute of repose "is a condition precedent to a party's right to maintain a lawsuit."

---

[2] The statutory authority and North Carolina case law are clear that the test for tolling the statute of limitations due to incompetency requires that: 1) the plaintiff is "under a disability *at the time the cause of action accrued*"; 2) the disability exist when the cause of action accrues; and 3) the test for disability is limited to the mental capacity to manage one own affairs or to make or communicate important decisions. N.C. Gen. Stat. § 1-17 (emphasis added). Although Plaintiff alleges that he was "determined to be incompetent to manage his own affairs on October 11, 2019 (and, in conclusory fashion, that the statutes of limitations for all claims he had prior to November 25, 2019, were tolled until that date), there is no allegation in the Complaint that Plaintiff's disability existed at the time his causes of action accrued in the 1980s, at the latest. More specifically, Plaintiff's Complaint does not allege, assert, or suggest in any detail that at the time his causes of action accrued, Plaintiff lacked the mental capacity to manage his own affairs or to make or communicate important decisions consistent with the definition established in N.C. Gen. Stat. § 35A-1101(7). The allegations of Plaintiff's Complaint do not establish that the tolling requirements of N.C. Gen. Stat. § 1-17 have been satisfied.

*Tipton & Young Constr. Co, Inc. v. Blue Ridge Structure Co.*, 116 N.C. App. 115, 117, 446 S.E.2d 603, 605 (1994), *aff'd per curiam*, 340 N.C. 257, 456 S.E.2d 308 (1995). A plaintiff is required to plead and prove that the statute of repose is not a bar to the maintenance of the action. *Id.*

The repose period runs from the last act or omission of the defendant giving rise to the cause of action and the period is not subject to tolling. *CTS Corp v. Waldenburger*, 573 U.S. 1, 9-10 (2014) ("under North Carolina law statutes of limitation may be tolled but statutes of repose may not."). Thus, a statute of repose serves as "an unyielding and absolute barrier" preventing a plaintiff's claim even before his cause of action accrues. *Nolan v. Paramount Homes, Inc.*, 135 N.C. App. 73, 77, 518 S.E.2d 789, 792 (1999). "If plaintiff fails to file within the prescribed period, the statute gives defendant a vested right not to be sued." *Id.*

Plaintiff's state law claims are barred by the statute of repose because Plaintiff did not initiate the lawsuit within 10 years of the last acts of Detective Munday or any of the defendants. *See* N.C. Gen. Stat. § 1-52(16). Because this Court must apply the most analogous state statute of repose to Plaintiff's federal claims, both his state and federal claims must be dismissed as time-barred by the applicable statute of repose.

### III. Counts I and II of Plaintiff's Complaint are barred by the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine maintains the jurisdictional distribution in the federal courts by insuring that the federal district courts do not exercise appellate jurisdiction over state court decisions. *See generally Dist. of Columbia Ct. of App. v. Feldman,* 460 U.S. 462 (1983) (establishing a jurisdictional doctrine to prevent federal district courts from exercising appellate jurisdiction); *Rooker,* 263 U.S. at 413 (same). The doctrine divests federal district courts of subject matter jurisdiction in cases where they are called upon to review state court judgments.

*See Exxon Mobil,* 544 U.S. at 293. In other words, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state court judgments." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005); *see also Twin City Fire Ins. Co. v. Adkins,* 400 F.3d 293 (6th Cir. 2005) (explaining that federal district courts lack jurisdiction over challenges to state court decisions).

The purpose of the *Rooker-Feldman* doctrine is to preclude a United States district court from exercising appellate jurisdiction over a state court judgment in an action it would otherwise be empowered to adjudicate only under some congressional grant of authority (as in *habeas* cases). *Exxon Mobil,* 544 U.S. at 291. In both *Rooker* and *Feldman*, the losing party in state court filed a suit in federal court after the state proceedings ended, complaining of injuries caused by the state court judgment. *Id*.

*Exxon* is instructive with regard to the proper application of the *Rooker-Feldman* doctrine:

> The *Rooker-Feldman* doctrine … is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Id.* at 284.

Both Counts I and II of the Complaint center on the manner in which Plaintiff alleges he was interrogated by Detectives Holder and Munday in 1983. This Court lacks jurisdiction to consider Counts I and II under the *Rooker-Feldman* doctrine. Further, this Court lacks jurisdiction under the *Rooker-Feldman* doctrine because review of Plaintiff's claims would invite this Court to "review and reject" state court decisions and require it to " 'engage in prohibitive appellate review' of judgments by state courts … to determine if they violated [the party's] constitutional rights." *See Johnson v. Ohio Supreme Court*, 156 Fed. Appx. 779, 782-83 (6th

Cir. 2005). The previous state court decisions themselves are the source of Plaintiff's alleged injury. Because it is the existing state court orders that are the source of the alleged injury, the *Rooker-Feldman* doctrine precludes Plaintiff from using this Court to constructively invalidate them.

In Count I of the Complaint, Plaintiff alleges:

> Any reasonable law enforcement officer in 1983 would have known – and these defendants did know – that the tactics used to obtain false admissions from James Blackmon were improper, coercive, and highly likely to generate false statements.

[D.E. 1, ¶ 258], and

> The arrest, prosecution, conviction, and confinement of James Blackmon was deliberately and purposefully brought about by defendants Holder and Munday and was the obvious and intended result of their manipulative interrogation of Blackmon.

*Id.* at ¶ 261.

In Count II of the Complaint, Plaintiff alleges:

> Defendants Holder and Munday, acting in concert, and aiding and abetting one another, deprived Mr. Blackmon of his liberty without due process of law, and of his right to a fair criminal proceeding, by manipulating Blackmon's severe mental illness and intellectual disability to cause him to fabricate false inculpatory statements despite his actual innocence."

*Id.* at ¶ 266, and

> Defendants Holder and Munday intentionally exploited Blackmon's intellectual disability, severe mental illness, and susceptibility to suggestion to cause him to make false incriminating statements.

*Id.* at ¶ 271.

In 1989, the Court of Appeals of North Carolina found no error in the trial judge's denial of Plaintiff's motion *in limine* to suppress the statements he made to Detectives Holder and

Munday. *State v. Blackman*, 93 N.C. App. 207 (1989). Specifically, the Court of Appeals considered the following arguments:

1. Plaintiff "contends that he was not mentally competent on the occasions he spoke to Holder and Munday and that his incriminating statements, therefore, should have been suppressed." *Id.* at 211, 377 S.E.2d at 292;

2. Plaintiff's "lack of competence rendered his admissions 'involuntary' under the Due Process Clause of the Fourteenth Amendment." *Id.*; and

3. "[Plaintiff] asserts that Holder and Munday's use of his psychiatric history to guide their interrogative tactics constituted coercion." *Id.* at 211, 377 S.E.2d at 293.

After considering Plaintiff's arguments (including a review of the circumstances under which Plaintiff made incriminating statements and review of Plaintiff's medical records relevant to his psychiatric history), the Court of Appeals concluded that: 1) Plaintiff was not in police custody at the time he made his admissions; 2) Detectives Holder and Munday did not coerce Plaintiff into making any statements; and 3) Plaintiff's statements were not rendered involuntary by his mental condition and that he was legally competent to make those statements to the police detectives. *Id.* at 212-13, 377 S.E.2d at 293-94.

Plaintiff's claim that Detective Munday used psychologically manipulative interrogation techniques to coerce a confession was litigated in the state trial court and the Court of Appeals of North Carolina. Specifically, the Court of Appeals held that:

> The judge correctly concluded, therefore, that the detectives did not subject defendant to custodial interrogations. Consequently, the judge did not err by refusing to suppress the statements on the ground that defendant did not receive *Miranda* warnings.
>
> …
>
> Defendant asserts that Holder and Munday's use of his psychiatric history to guide their interrogative tactics constituted coercion. We reject this

> contention … At no time did these detectives force defendant to submit to any of the ordeals traditionally associated with coercive interrogations.
>
> …
>
> The [trial] judge's finding that Dr. Rollins' opinion best identifies defendant's mental condition during the period in which he made his admissions to the police is supported by competent evidence in the record. We accept that finding as binding upon us … We hold, therefore, that defendant's statements were not rendered involuntary by his mental condition and that defendant was legally competent to make those statements to the police detectives.

*State v. Blackman*, 93 N.C. App. at 211-13, 377 S.E.2d at 292-94 (1989).

In *Benjamin v. Abraham*, No. CIV.A. 06-5561, 2007 WL 839546, at *2 (E.D. Pa. Mar. 15, 2007), the plaintiff had been arrested and charged with second-degree murder, robbery, and related charges. Prior to trial, plaintiff filed a motion to suppress his confession. *Id.* The plaintiff's motion to suppress was denied after the judge concluded, as a matter of law, that the *Miranda* warnings were properly given, that there was no violation of state law, and that the plaintiff's statement was voluntary. *Id.* The plaintiff later filed an appeal in the Superior Court based on two issues: 1) whether the court erred "when it denied appellant's motion to suppress the confession, which was the product of an illegal search and seizure," and 2) whether the trial court erred "when it denied appellant's motion to suppress the confession when the confession appellant gave was not a knowing and voluntary one." *Id.* On appeal, the Superior Court concluded that the plaintiff's motion to suppress was properly denied because the plaintiff "voluntarily and knowingly waived his constitutional rights" before making the confession. *Id.* at *3. The Supreme Court of Pennsylvania denied the plaintiff's petition for writ of mandamus.

When the plaintiff sought relief in the United States District Court for the Eastern District of Pennsylvania, the court framed the issue as whether the facts underlying the plaintiff's case were "actually litigated" or were "inextricably intertwined" with a prior state court judgment

against the plaintiff. *Id.* at *4. The district court concluded that the plaintiff's claims related to the admission of his confession were "actually litigated" in state court and therefore the plaintiff's federal claims based on the same legal issues were barred by the *Rooker-Feldman* doctrine.

In the case before this Court, Plaintiff was the losing party in two previous state court decisions. The Wake County Superior Court denied Plaintiff's motion *in limine* to suppress incriminating statements on August 31, 1987, and the Court of Appeals of North Carolina denied Plaintiff's appeal of the motion on March 21, 1989. The legal issues raised by Counts I and II of the Complaint were litigated in state court. Further, resolving Counts I and II in this Court would effectively place this Court in appellate review of the prior state court judgments against Plaintiff and in violation of the *Rooker-Feldman* doctrine. Counts I and II of Plaintiff's Complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction based on the *Rooker-Feldman* doctrine.

**IV.     Count V of the Complaint fails because Plaintiff's conspiracy claim is barred by the intracorporate immunity doctrine and Plaintiff fails to state a cognizable claim for civil obstruction of justice.**

Plaintiff has asserted common law claims against Detective Munday for obstruction of justice and civil conspiracy. [D.E. 1, ¶¶ 319-28]. Plaintiff's Complaint alleges that, "Defendants Holder and Munday committed these acts and omissions *in the scope of their employment as Raleigh police officers*, and the City of Raleigh is liable for their actions through *respondeat superior*." [D.E. 1, ¶ 327] (emphasis added).

"The elements of civil conspiracy are: (1) an agreement between two or more individuals; (2) to do an unlawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Strickland*

14

*v. Hedrick*, 194 N.C. App. 1, 19, 669 S.E.2d 61, 72 (2008). North Carolina courts do not recognize "a separate civil action for civil conspiracy," but rather construe claims of civil conspiracy as covering other torts that fit with the facts alleged. *Id.* at 19, 669 S.E.2d at 73.

Plaintiff's civil obstruction of justice claim must be dismissed because no North Carolina court has found an obstruction of justice claim for actions taken by a police officer as part of a criminal investigation. *See Evans v. Chalmers*, 703 F.3d 636, 658 (4th Cir. 2012) ("we have not found—and plaintiffs have not offered—any case from any jurisdiction recognizing a common-law obstruction of justice claim against a police officer for his actions relating to a criminal proceeding"); *Massey v. Ojaniit*, 759 F.3d 343, 358 (4th Cir. 2014) (noting that there "has been a dearth of North Carolina case law developed since *Evans* was decided," and that it was "unrealistic that North Carolina would uphold an obstruction of justice claim in that context"); *Haynes v. City of Durham*, No. 12CV1090, 2014 WL 2864470, at *10 (M.D.N.C. June 24, 2014) ("Plaintiffs have not offered any case in which a court has found a claim for obstruction of justice against a police officer for actions undertaken in a criminal proceeding. Thus, the claim will be dismissed."). Because all of the factual allegations supporting Plaintiff's civil obstruction of justice claim relate to actions taken as part of the criminal investigation and proceedings, the claim must fail as to Detective Munday.

Plaintiff's allegation that Detective Munday conspired with Defendant City of Raleigh and Defendant Detective Holder cannot support a civil conspiracy claim under North Carolina law because a municipality, such as Defendant City of Raleigh, generally may not be a party to a conspiracy. *Houpe v. City of Statesville*, 128 N.C. App. 334, 352, 497 S.E.2d 82, 93–94 (1998).

Plaintiff's conspiracy claim must also fail as a matter of law under the intracorporate immunity doctrine (or intracorporate conspiracy doctrine, as some cases refer to it). The

15

intracorporate immunity doctrine stems from the requirement that a conspiracy necessarily must have multiple conspirators, and if all alleged conspirators are acting on behalf of a corporation, such a conspiracy must fail, as a corporation cannot conspire with itself. *Buschi v. Kirven*, 775 F.2d 1240, 1251–53 (4th Cir. 1985); *Fox v. City of Greensboro*, 807 F. Supp. 2d 476, 499 (M.D.N.C. 2011). This doctrine is also applicable to municipalities. *Fox*, 807 F. Supp. 2d at 499 (citing *Iglesias v. Wolford*, 539 F. Supp. 2d 831, 835–36 (E.D.N.C. 2008) (Dever, J.)); *see also Turner v. Randolph County, N.C.*, 912 F. Supp. 182 (M.D.N.C. 1995) (applying the intracorporate conspiracy doctrine to county government).

"[S]ince at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself … *An allegation that a corporation is conspiring with its agents, officers, or employees is tantamount to accusing a corporation of conspiring with itself*." *Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 785 (M.D.N.C. 2011) (emphasis added). Furthermore, "merely suing the officers, employees, or agents in their individual capacities does not change th[is] result." *Fox*, 807 F. Supp. 2d at 499.

In light of the allegation that Detectives Holder and Munday "committed these acts and omissions in the scope of their employment as Raleigh police officers," [D.E. 1, ¶ 327], Plaintiff's claim that the City of Raleigh is conspiring with its agents, officers, or employees is tantamount to accusing it of conspiring with itself. Because, as a matter of law, the City of Raleigh cannot conspire with its own officers, employees, or agents, Detective Munday cannot be liable for civil conspiracy.

**V.     Plaintiff's claims brought directly under the North Carolina Constitution should be dismissed because Plaintiff has adequate remedies at state law.**

Counts VII and VIII are claims brought directly under the North Carolina Constitution "only to the extent Plaintiff's state tort remedies are determined to be inadequate as a matter of

law." [D.E. 1, ¶ 338]. It is well established that a plaintiff may not maintain a claim under the North Carolina Constitution when adequate remedies at state law exist.

The North Carolina Supreme Court articulated the standard for claims under the State Constitution in *Corum v. Univ. of North Carolina*, 330 N.C. 761, 413 S.E.2d 276 (1992), holding that, "in the *absence* of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." *Id.* at 782, 413 S.E.2d at 289 (emphasis added). Such claims may be brought only against government officials in their official capacities. *Id.* at 783-84, 787, 413 S.E.2d at 290, 292. However, the Supreme Court cautioned that claims under the Constitution are limited to when a plaintiff has "*no other remedy*." *Id.* at 783, 413 S.E.2d at 290 (emphasis added).

North Carolina courts consistently apply this rule and hold that claims under the Constitution must fail when adequate state law remedies, such as common-law tort claims, are available. *See Glenn-Robinson v. Acker*, 140 N.C. App. 606, 538 S.E.2d 601 (2000); *Rousselo v. Starling*, 128 N.C. App. 439, 447, 495 S.E.2d 725, 731 (1998) (claim for false imprisonment provides an adequate state law remedy for alleged violation of the right to be free from "unreasonable detention, search and seizure" in violation of Article I, Sections 19 and 20 of N.C. Constitution); *Lorbacher v. Housing Authority of City of Raleigh*, 127 N.C. App. 663, 493 S.E.2d 74 (1997); *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 449 S.E.2d 240 (1994), *disc. rev. denied*, 339 N.C. 737, 454 S.E.2d 648 (1995) (a false imprisonment or false arrest claim was an adequate remedy for alleged violation of right to be "free from unlawful restraint," in violation of Sections 19 and 20); *Alt v. Parker*, 112 N.C. App. 307, 435 S.E.2d 773 (1993) (common law claim for false imprisonment provides adequate remedy for an alleged violation of the right to be free unlawful restraint). *See also Haynes v. City of Durham*, No. 1:12CV1090,

2016 WL 469608, at *7 (M.D.N.C. Feb. 5, 2016) (claims for malicious prosecution and obstruction of justice against officers individually provided an adequate state law remedy that precluded direct claims under Article I, Sections 19 and 20 of the N.C. Constitution); *Iglesias v. Wolford*, 539 F.Supp.2d 831 (E.D.N.C. 2008); *Olvera v. Edmundson*, 151 F. Supp. 2d 700 (W.D.N.C. 2001).

Plaintiff bears the burden of sufficiently pleading the non-existence of any adequate state law remedy. *Copper v. Denlinger*, 363 N.C. 784, 788, 688 S.E.2d 426, 428 (2010). The "term 'adequate' in *Corum* is not used to mean 'potentially successful.' " *Craig ex rel. Craig v. New Hanover Bd. of Educ.*, 185 N.C. App. 651, 656, 648 S.E.2d 923, 927 (2007), *overruled on other grounds by Craig ex rel. Craig v. New Hanover County Bd. of Educ.*, 363 N.C. 334, 678 S.E.2d 351 (2009). Rather, it means " 'available, existing, applicable remedy.' " *Id.* Plaintiff has an adequate remedy at law because he can pursue state law tort claims against Detective Munday in his individual capacity (which he has asserted in the Complaint).

Plaintiff's claims under the North Carolina Constitution are precluded by the existence of a common law remedy. When other adequate legal remedies exist, a plaintiff cannot seek monetary damages under the State Constitution against a public official in his official capacity, as a matter of law. Constitutional claims must "bow to established claims and remedies where these provide an alternative to the extraordinary exercise of [the court's] inherent constitutional power." *Corum*, 330 N.C. at 784, 413 S.E.2d at 291 (internal citations omitted). Consequently, Plaintiff cannot pursue State constitutional claims for monetary damages against Detective Munday and therefore Counts VII and VIII fail as a matter of law.

## CONCLUSION

Based on the foregoing reasons and authorities, Defendant Andrew Munday, in his individual capacity, respectfully requests that this Court dismiss with prejudice Plaintiff's Complaint and Demand for Jury Trial.

Respectfully submitted, this the 7th day of December, 2020.

/s/ Sonny S. Haynes
Rachel E. Keen
N.C. State Bar No. 27777
Sonny S. Haynes
N.C. State Bar No. 41303
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
E-mail: Rachel.Keen@wbd-us.com
E-mail: Sonny.Haynes@wbd-us.com
*Attorneys for Defendant Andrew Munday*

# CERTIFICATE OF SERVICE

I certify that on December 7, 2020, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT ANDREW MUNDAY** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all Counsel of record.

/s/ Sonny S. Haynes
Sonny S. Haynes
N.C. State Bar No. 41303
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3632
Facsimile: (336) 726-2227
E-mail: Sonny.Haynes@wbd-us.com
*Attorney for Defendant Andrew Munday*