IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-524-FL

| | |
|---|---|
| JAMES BLACKMON, a/k/a Jimmy Andrew Underwood, by and through his Guardian of the Estate Paul Truett Canady, II, ) ) ) ) Plaintiff, ) ) v. ) ) JAMES HOLDER, in his individual capacity; ANDREW MUNDAY, in his individual capacity; and CITY OF RALEIGH, ) ) ) ) ) ) Defendants. | ORDER |

This matter is before the court upon motions to dismiss filed by defendants City of Raleigh ("City") (DE 21), Andrew Munday ("Munday") (DE 23), and James Holder ("Holder") (DE 30). The motions have been briefed fully, and the issues raised are ripe for ruling. For the following reasons, defendants' motions are granted in part and denied in part.

**STATEMENT OF THE CASE**

Plaintiff commenced this action October 5, 2020, asserting that individual defendants, who are former detectives of the Raleigh Police Department, deprived plaintiff of due process in connection with plaintiff's 1988 conviction for second degree murder. Plaintiff asserts claims under 42 U.S.C. § 1983 for violation of his Fourth and Fourteenth Amendment rights, as well as state law claims for civil conspiracy, negligence, and state constitutional violations. Plaintiff seeks compensatory and punitive damages, costs, fees, and interest.

Defendants City, Munday, and Holder filed the instant motions to dismiss December 4, December 7, and December 23, 2020, respectively. All defendants seek dismissal of plaintiff's complaint for failure to state a claim, and defendants Holder and Munday also seek dismissal for lack of subject matter jurisdiction. Plaintiff filed an omnibus response to defendants' motions to dismiss January 11, 2021, relying upon unpublished orders in the cases <u>Lowery v. Cty of Riley</u>, No. 04-3101-JTM, 2005 WL 1242376 (May 25, 2005) and <u>Womble v. City of Durham et al</u>, No. 1:17-CV-908 (M.D.N.C. June 1, 2018), as well as motion to dismiss filed in <u>Womble</u>. Shortly thereafter, plaintiff filed stipulation of dismissal, voluntarily dismissing his state law claim for civil conspiracy without prejudice. Defendants replied in support of their motions January 25, 2021, and defendant City attached a copy of North Carolina Session Law 2019-245 to its reply.

## STATEMENT OF FACTS

The facts alleged in plaintiff's complaint may be summarized as follows. On September 29, 1979, Helena Payton ("Payton") was attacked in the bathroom of her dormitory at St. Augustine's College in Raleigh, North Carolina. (Compl. (DE 1) ¶ 10). Shortly thereafter, Payton died from her injuries. (<u>Id.</u>). When Payton's murder remained unsolved 18 months later, the Raleigh Police Department assigned defendants Holder and Munday, members of the Major Crimes Task Force, to lead the investigation. (<u>Id.</u> ¶¶ 15-16).

On February 8, 1983, the Raleigh Police Department received tips from an anonymous source that a patient at Dorothea Dix Hospital was bragging about killing women in New York, New Jersey, and Raleigh, North Carolina. (<u>Id.</u> ¶ 17). The source also suggested that plaintiff, who was involuntarily committed at Dorothea Dix Hospital, fit the description of the patient. (<u>Id.</u> ¶ 19). After receiving this information, the Raleigh Police Department requested plaintiff's records from Dorothea Dix Hospital and various prisons in New York, all of which revealed that plaintiff had

2

been diagnosed with severe mental illnesses, including schizophrenia and delusional thinking, as well as an intellectual disability. (Id. ¶¶ 21-22).

The New York records also revealed that plaintiff was arrested in Binghamton, New York, on August 24, 1979, approximately one month before Payton's murder, and he was arrested again in Binghamton, New York, on November 8, 1979, approximately five weeks after Payton's murder. (Id. ¶¶ 23-24). There was no evidence that plaintiff had traveled to Raleigh, North Carolina, between his arrests in New York, and plaintiff's fingerprints did not match the latent prints lifted from the crime scene. (Id. ¶¶ 20, 25). Nevertheless, defendants Holder and Munday allegedly focused their investigation exclusively on plaintiff and failed to investigate or consider any other suspect. (Id. ¶¶ 27, 226).

Beginning in October 1983, defendants Holder and Munday interviewed plaintiff several times and allegedly "decided to exploit [plaintiff's] mental illness as part of their interrogation strategy, in order to get him to confess to the murder" of Payton. (Id. ¶¶ 147, 152-53, 155). Through such tactics, defendants Holder and Munday allegedly caused plaintiff to "fabricate false inculpatory statements despite his actual innocence," including that "the other James Blackmon" may have been involved in Payton's attack. (Id. ¶¶ 200-207, 266). Plaintiff was arrested for Payton's murder December 7, 1983. (Id. ¶¶ 227, 256).

After maintaining his innocence for over four years, and upon the advice of counsel, plaintiff entered a plea pursuant to North Carolina v. Alford, 400 U.S. 25 (1970) to second-degree murder. (Id. ¶¶ 227-231, 233). Plaintiff was sentenced to life imprisonment January 14, 1988. (Id. ¶ 6). In March 2012, the North Carolina Innocence Inquiry Commission commenced an investigation into plaintiff's conviction, and approximately seven years later, a three-judge panel

of North Carolina Superior Court judges unanimously concluded that plaintiff was factually innocent. (Id. ¶¶ 3-9). Prior to his exoneration, plaintiff spent over 35 years in prison. (Id. ¶ 1).

Additional facts relevant to the instant motions will be discussed below.

## COURT'S DISCUSSION

A. Standards of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party in such case "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id. In contrast, where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-

4

pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.  Analysis

  1.  Rooker-Feldman

Defendants Holder and Munday argue that plaintiff's claims are barred by the Rooker-Feldman doctrine. For judicial review of questions arising under federal law, "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." 28 U.S.C. § 1257(a). Construing its grant of appellate jurisdiction under § 1257, the United States Supreme Court has explained that district courts "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." Dist. of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462, 486 (1983); see Rooker v. Fid. Tr. Co., 263 U.S. 413, 415–16 (1923). In Feldman, the Court further explained that claims that were "inextricably intertwined" with a state court's decision were not subject to review in federal district court. 460 U.S. at 482 n. 16.

Construing Feldman's language, the United States Court of Appeals for the Fourth Circuit previously held that a claim is "inextricably intertwined" with a state court decision if "'success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.'" Shooting Point, LLC v. Cumming, 368 F.3d 379, 383 (4th Cir. 2004) (quoting Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997)). However, the Supreme Court has since clarified

5

that the Rooker-Feldman doctrine applies in the narrow set of cases where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Exxon Mobil Corp., 544 U.S. at 291. "In other words, the doctrine simply precludes federal district courts from exercising what would be, in substance, appellate jurisdiction over final state-court judgments." Hulsey v. Cisa, 947 F.3d 246, 250 (4th Cir. 2020) (citing Thana v. Bd. of License Comm'rs for Charles Cty., Maryland, 827 F.3d 314, 320 (4th Cir. 2016)).

The instant matter does not fall within the Rooker-Feldman doctrine's narrow scope because plaintiff is not complaining of an injury caused by a state court judgment. See Hulsey, 947 F.3d at 250. Plaintiff alleges that defendants Holder and Munday "intentionally exploited [plaintiff's] intellectual disability, severe mental illness, and susceptibility to suggestion to cause him to make false incriminating statements." (Compl. (DE 1) ¶ 271). Moreover, plaintiff alleges that the "arrest, prosecution, conviction, and confinement of [plaintiff] was deliberately and purposefully brought about by defendants Holder and Munday and was the obvious and intended result of their manipulative interrogation of [plaintiff]." (Id. ¶ 261). Finally, plaintiff alleges that his attorney filed a motion to suppress his statements obtained by defendants Holder and Munday, and the motion was denied on August 31, 1987.[1] (Id. ¶ 228).

Where plaintiff's alleged injuries occurred during the investigation process, prior to any decision by the state court, plaintiff "does not seek[ ] redress for an injury caused by the state-court decision itself." Husley, 947 F.3d at 250 (emphasis in original). Even if the state court's denial of plaintiff's motion to suppress aided in defendants' alleged violation of plaintiff's civil rights,

---

[1] Although not alleged in plaintiff's complaint, the parties mention in briefing that the North Carolina Court of Appeals affirmed the denial of the motion to suppress in State v. Blackman, 93 N.C. App. 207 (1989).

6

"that does not make the state court's [evidentiary] ruling the cause of [plaintiff's] injury." Id. Indeed, "[a] plaintiff's injury at the hands of a third party may be 'ratified, acquiesced in, or left unpunished by' a state-court decision without being 'produced by' the state-court judgment." Id. (quoting Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 88 (2d Cir. 2005)). Accordingly, the Rooker-Feldman doctrine does not bar plaintiff's claims. See Washington v. Wilmore, 407 F.3d 274, 280 (4th Cir. 2005) (holding that the Rooker-Feldman doctrine did not bar plaintiff's § 1983 claims, where plaintiff's "claim of injury rests not on the state court judgment itself, but rather on the alleged violation of his constitutional rights by [the investigating officer]").

Defendant Munday contends that plaintiff characterizes his claim as "police fabrication of false evidence", rather than a coerced confession, to circumvent the Rooker-Feldman doctrine's bar. (See Mem. (DE 36) 4-5). However, under either characterization, plaintiff's alleged injuries arose from defendant Munday and Holder's conduct, not a state court decision. Therefore, the Rooker-Feldman doctrine does not apply.

Finally, defendant Munday's reliance upon Benjamin v. Abraham, No. CIV.A. 06-5561, 2007 WL 839546, at *5 (E.D. Pa. Mar. 15, 2007) is unavailing. In Benjamin, the court found that a state court judgment denying plaintiff's motion to suppress evidence seized during a warrantless search, as well as his confession, barred plaintiff's federal constitutional claims. Importantly, however, the court in Benjamin did not analyze whether the prior state court judgment caused plaintiff's alleged injury, an inquiry mandated by controlling precedent in this circuit. See Husley, 947 F.3d at 250. Thus, Benjamin is inapposite.

For all these reasons, plaintiff's claims are not barred by the Rooker-Feldman doctrine, and defendant's Holder and Munday's motions to dismiss are denied in this part.

    2.        Statute of Repose – § 1983 Claims

7

Defendants seek to dismiss plaintiff's claims asserted under 42 U.S.C. § 1983, on grounds that they are barred by the ten-year statute of repose set forth in North Carolina General Statute § 1-52(16). [2]

Claims brought under 42 U.S.C. § 1983 are "governed by appropriate 'laws of the United States,' but if such laws are unsuitable or inadequate, state-law rules are borrowed unless a particular state rule is 'inconsistent with the Constitution and laws of the United States.'" Chardon v. Fumero Soto, 462 U.S. 650, 655–56 (1983) (quoting 42 U.S.C. § 1988). Because § 1983 "do[es] not provide for a specific statute of limitations, establish rules regarding the tolling of the limitations period, or prescribe the effect of tolling", id. at 655, "courts considering § 1983 claims should borrow the general or residual statute for personal injury actions" under state law. Owens v. Okure, 488 U.S. 235, 249–50 (1989). Likewise, the court borrows applicable tolling rules provided under state law. Hardin v. Straub, 490 U.S. 536, 539 (1989); Bd. of Regents of Univ. of State of N. Y. v. Tomanio, 446 U.S. 478, 485–86 (1980). In contrast, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law" but instead is "governed by federal rules conforming in general to common-law tort principles." Wallace v. Kato, 549 U.S. 384, 388 (2007) (emphasis in original).

Defendants contend, and plaintiff denies, that the ten-year statute of repose set forth in North Carolina General Statute § 1-52(16) applies to plaintiff's § 1983 claims. In determining the applicability of the statute of repose, its context must be considered. See generally Stahle v. CTS

---

[2]  Under North Carolina law, the statute of limitations is three years "for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated." N.C. Gen. Stat. § 1-52(5). This statute of limitations applies to plaintiff's § 1983 claims. Owens, 488 U.S. at 248 n.9; Tommy Davis Const., Inc. v. Cape Fear Pub. Util. Auth., 807 F.3d 62, 66– 67 (4th Cir. 2015). Defendants do not move to dismiss on statute of limitation grounds. (See Mem. (DE 24) at 8) (assuming arguendo, but denying, that plaintiff's incapacity tolled the statute of limitations); (see Mem. (DE 31) at 5) (same); (see Mem. (DE 22) at 6-7) (stating that even if the statute of limitations is tolled, the statute of repose applies). In any event, the allegations in plaintiff's complaint allow the reasonable inference that plaintiff's mental illness and incapacity existed at all times relevant to the instant action until the appointment of a guardian on October 11, 2019. (See, e.g., Compl. (DE 1) 104-105, 116-119, 126, 146-47, 322).

Corp., 817 F.3d 96, 105 (4th Cir. 2016) ("[T]he Supreme Court of North Carolina does not read segments of a statute in isolation. Instead, in determining the plain meaning of the words chosen by the legislature, the Supreme Court of North Carolina reads those words within the context of the statute.") (internal citations and quotations omitted); Watson Indus. v. Shaw, 235 N.C. 203 (1952) ("Few words are so plain that the context or the occasion is without capacity to enlarge or narrow their extension."). The statute of repose is contained in the final sentence of the following provision:

> Unless otherwise provided by law, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1-15(c), shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Except as provided in G.S. 130A-26.3 or G.S. 1-17(d) and (e), no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

N.C. Gen. Stat. § 1-52(16).

This provision governs the date on which a cause of action accrues. See Stahle, 817 F.3d at 108 ("We conclude that [N.C. Gen. Stat. § 1-52] subsection 16 in turn is an accrual provision . . ." (emphasis added)); see also Godbold by & through Holloway v. Cherokee Cty., No. 1:20 CV 202 MR WCM, 2021 WL 1590387, at *7 (W.D.N.C. Jan. 14, 2021) ("Defendants cite cases that reference statutes that set a deadline by which a claim must be filed. Section § 1-52(16), however, limits the time period in which a claim may accrue." (emphasis in original)). Indeed, the provision provides that certain causes of action accrue when the harm or damage becomes apparent, or ought reasonably to have become apparent to the claimant, and if that occurs more than ten years from the last act or omission of the defendant giving rise to the cause of action, then the cause of action does not accrue. See N.C. Gen. Stat. § 1-52(16).

9

Importantly, courts do not look to state law when determining the accrual date of § 1983 claims. See Wallace, 549 U.S. at 388; Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975) ("The time limitation for civil rights actions, such as those under § 1983, is borrowed from state law because Congress did not set a tolling period for such actions, but the state law concerning time of accrual is in no sense loaned to the body of federal civil rights law along with the tolling period. The time of accrual of a civil rights action is a question of federal law."). In consequence, North Carolina General Statute § 1-52(16), as an accrual provision, does not govern plaintiff's § 1983 claims.

Even if the statute of repose is to be considered in isolation—that is—without regard to its context within an accrual provision, additional reasons suggest that it does not apply to plaintiff's § 1983 claims. First, although the Fourth Circuit has not addressed this issue, several courts have declined to apply state statutes of repose to federal claims. See, e.g., Moore v. Liberty Nat'l Life Ins. Co., 267 F.3d 1209, 1219 (11th Cir. 2001) (holding that Alabama's common-law rule of repose did not apply to claims under § 1981 and § 1982); Craft v. Vanderbilt Univ., 18 F. Supp. 2d 786, 798 (M.D. Tenn. 1998) (holding that Tennessee's statute of repose did not apply to claims under § 1983 and § 1985); Chapman v. Rhoney, No. 1:10CV258, 2012 WL 1944863, at *3 (W.D.N.C. May 30, 2012) (holding that North Carolina's statute of repose did not apply to § 1983 claims); Lowery v. Cnty of Riley, No. 04–3101–JTM, 2005 WL 1242376, at *4 (D. Kan. May 25, 2005) (holding that a Kansas statute of repose did not apply to a § 1983 claim arising from a wrongful conviction). Central to the courts' reasoning in those cases is the fact that, unlike statutes of limitations, statutes of repose are rare in federal statutory schemes. E.g., Moore, 267 F.3d at 1215. In consequence, § 1983's lack of a repose provision does not render it "unsuitable or inadequate", obviating need to borrow such a provision from state law. Chardon, 462 U.S. at 655–

56. Finding this line of reasoning persuasive, the concludes that North Carolina statue of repose does not apply to plaintiff's § 1983 claims.

Defendants City and Munday argue that the Supreme Court's decision in CTS Corp. v. Waldburger, 573 U.S. 1, 18 (2014) compels a different result. However, the issue raised in Waldburger was whether North Carolina's statute of repose applied to a state law nuisance claim alleging contaminated well water, or whether the statute of repose was preempted by the Comprehensive Environmental Response, Liability, and Compensation Act ("CERCLA"), 42 U.S.C. §§ 9601–9675. 573 U.S. at 6. Although the Supreme Court concluded that the statute of repose was not preempted, its decision has no bearing whether North Carolina's statute of repose applies to § 1983 claims. Accordingly, Waldburger does not guide the court's analysis here.

Other cases relied upon by defendant Munday are also inapposite. First, in Montgomery v. Univ. of Chicago, 776 F. Supp. 342, 346 (N.D. Ill. 1991), the court found that pro se plaintiff's medical malpractice claim, purportedly asserted under 42 U.S.C. § 1983, was barred by a state law statute of limitations and repose; importantly, however, the court did not provide any discussion or analysis on the applicability of the statute of repose. Moreover, because the court found that a two-year statute of limitations barred plaintiff's claim, its additional finding that the claim was barred under a four-year statute of repose was not necessary to the court's disposition of plaintiff's claim. Id. at 347. Next, in Cross v. Lucius, 713 F.2d 153, 155 (5th Cir. 1983), the court considered whether a state statute of limitations and tolling provision applied to a claim for wrongful deprivation of property asserted under 42 U.S.C. §§ 1983, 1985(3). Crucially, the court's opinion is devoid of any reference to a statute of repose. See id. Finally, the string of cases cited by defendant Munday are not helpful, where they hold only that state statute of limitations and tolling provisions apply to federal civil rights claims. (See Mem. (DE 24) at 7).

11

For all these reasons, defendants' motions to dismiss are denied in this part.

3.   Statute of Repose and State Law Claims

Defendants also argue that plaintiff's state law claims are barred by the ten-year statute of repose set forth in North Carolina General Statute § 1-52(16). Interpreting that provision, the Fourth Circuit concluded:

> Section 1–52(16) appears plainly to apply to some—but not all—personal injury claims. Specifically, it appears to apply to that set of personal injuries for which bodily harm to the claimant . . . becomes apparent at some point in time after the injury; that is, it applies to latent injuries.

Stahle, 817 F.3d at 108 (internal quotations and citation omitted); see Misenheimer v. Burris, 360 N.C. 620, 622 (2006) (indicating that Section 1-52(16) applies to "torts resulting in certain latent injuries"). Then, the Fourth Circuit considered whether Section 1-52(16) applied to disease. After finding that disease was not a latent injury because "the legal injury and awareness of that injury occur simultaneously at diagnosis", the Fourth Circuit concluded that Section 1-52(16) did not apply. Stahle, 817 F.3d 110 (citing Wilder v. Amatex, 314 N.C. 550, 556-57 (1985)).

Here, plaintiff's state law claims are predicated upon his wrongful incarceration.[3] Wrongful incarceration is similar to disease in the sense both injuries require some sort of declaration—either a diagnosis from a doctor or a determination from a judicial body that the incarceration was wrongful—in order for the injury to become legally cognizable. See generally, Heck v. Humphrey, 512 U.S. 477, 489-90 (1994) ("Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." (internal citations

---

3   In briefing, plaintiff characterizes the injury underlying his state law claims as "wrongful incarceration." (Mem. (DE 33) at 16). Defendants do not object to this characterization in their reply briefs. Thus, for purposes of the instant motions, the court considers wrongful incarceration to be plaintiff's alleged injury.

omitted)). Thus, like disease, for wrongful incarceration, the legal injury and awareness thereof occur simultaneously. This suggests that plaintiff's injury is not latent, and Section 1-52(16) does not apply to plaintiff's state law claims.

If, instead, Section 1-52(16) applied to plaintiff's state law claims, then they could possibly accrue before a judicial body determined his incarceration was wrongful—an inconceivable result. The North Carolina Supreme Court reached a similar conclusion, when considering whether Section 1-52(16)'s predecessor, Section 1-15(b), applied to disease. The North Carolina Supreme Court reasoned:

> if G.S. 1–15(b) is applied to disease then the time of claim accrual is not the date of diagnosis but the time the disease "was discovered or ought reasonably to have been discovered"—a time which may in some disease claims occur before actual diagnosis. It is inconceivable that the legislature enacted G.S. 1–15(b) in 1971 intending that claims for injuries caused by disease accrue before the disease is diagnosed.

Wilder, 314 N.C. at 561. This also suggests that Section 1-52(16) does not apply to plaintiff's state law claims.

Arguing that Section 1-52(16) is not limited to latent injuries, defendants City and Munday highlight that the North Carolina General Assembly amended Section 1-52 following the Fourth Circuit's decision in Stahle. In its current state, North Carolina General Statute 1-52 provides in pertinent part:

> Within three years an action—
>
> (5) For criminal conversation, or for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated, <u>except as provided by G.S. 1-17(d) and (e).</u>
>
> (16) Unless otherwise provided by law, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1-15(c), shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to

13

> the claimant, whichever event first occurs. Except as provided in G.S. 130A-26.3[4] <u>or G.S. 1-17(d) and (e),</u> no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.
>
> (19) For assault, battery, or false imprisonment, <u>except as provided by G.S. 1-17(d) and (e). Notwithstanding this subdivision, a plaintiff may file a civil action within two years of the date of a criminal conviction for a related felony sexual offense against a defendant for claims related to sexual abuse suffered while the plaintiff was under 18 years of age.</u>

N.C. Gen. Stat. § 1-52 (underlined text denotes amendments added by North Carolina Session Law 2019-245). The referenced statute, North Carolina General Statute § 1-17(d) provides:

> (d) Notwithstanding the provisions of subsections (a), (b), (c), and (e) of this section, a plaintiff may file a civil action against a defendant for claims related to sexual abuse suffered while the plaintiff was under 18 years of age until the plaintiff attains 28 years of age.
>
> (e) Notwithstanding the provisions of subsections (a), (b), (c), and (d) of this section, a plaintiff may file a civil action within two years of the date of a criminal conviction for a related felony sexual offense against a defendant for claims related to sexual abuse suffered while the plaintiff was under 18 years of age.

N.C. Gen. Stat. § 1-17. In light of the amendments added to Section 1-52 by North Carolina Session Law 2019-245, defendants City and Munday argue that "[t]he General Assembly clearly understood that the 10-year repose period would ordinarily apply to claims for 'assault, battery, and false imprisonment;' otherwise there would have been no need to specifically carve out that subgroup of such claims 'provided in G.S. 130-A-26.3 or G.S. 1-17(d) and (e).'" (Mem. (DE 37) at 5) (quoting North Carolina Session law 2019-245).

Defendants Munday and City's argument is unpersuasive for multiple reasons. First, because North Carolina General Statute § 1-52(19) imposes a three year statute of limitations for assault battery and false imprisonment claims, it was necessary to carve out of that subgroup an exemption for claims related to sexual abuse suffered while the plaintiff was under 18 years of age

---

[4] North Carolina General Statute § 130A-26.3 pertains to the limitation period for certain groundwater contamination actions and is not relevant to this action.

until the plaintiff attains 28 years of age, see N.C. Gen. Stat. § 1-17(d), and for claims related to sexual abuse suffered while the plaintiff was under 18 years of age, that are raised within two years of a defendant's criminal conviction for a related felony sexual offense, see N.C. Gen. Stat. § 1-17(e), where the three-year statute of limitations for those claims has already expired. This consideration is entirely unrelated to the statute of repose.

Second, the exemption that is carved out from the statute of repose pertains to claims for sexual abuse, and includes no mention of false imprisonment claims. See N.C. Gen Stat. §§ 1-17(d), (e); 1-52(16). In addition, the fact that Section 1-52(16) now includes a carve out for certain sexual abuse claims does not implicitly broaden the statute of repose to include non-latent claims, since sexual abuse could fall into that subset of injuries for which the harm to the claimant "becomes apparent at some point in time after the injury", or in other words, latent injuries. Stahle, 817 F.3d at 108; see, e.g., Am. Safety Cas. Ins. Co. v. City of Waukegan, 776 F. Supp. 2d 670, 712–13 (N.D. Ill. 2011) (describing sexual abuse as a "progressively worsening" injury). Finally, although the North Carolina Supreme Court indicated that Section 1-52(16) applies to "torts resulting in certain latent injuries" in Misenheimer in 2006, and the Fourth Circuit held that Section 1-52(16) applies to latent injuries only in Stahle in 2016, the North Carolina General Assembly did not include any language in North Carolina Session Law 2019-245 suggesting that Section 1-52(16) applies to non-latent injuries. Since the North Carolina General Assembly had the opportunity to include such language in 2019, and chose not to, one can assume that the North Carolina Generally Assembly has found Misenheimer and Stahle to accurately reflect its intent. See State v. Benton, 276 N.C. 641, 658 (1970) ("It is always presumed that the legislature acted with care and deliberation and with full knowledge of prior and existing law.").

For all these reasons, the court finds that the statute of repose set forth in North Carolina General Statute § 1-52(16) does not apply to plaintiff's state law claims, and defendants' motions are denied in this part.

4.   Qualified Immunity

Defendants Munday and Holder move to dismiss plaintiff's § 1983 claims asserted against them in their individual capacities, on the basis of qualified immunity.

A government official sued in his or her personal capacity may invoke the doctrine of qualified immunity. See Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006). "Government officials are entitled to the defense of qualified immunity unless a § 1983 claim satisfies the following two-prong test . . . :(1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a 'clearly established' right 'of which a reasonable person would have known.'" Id. (quoting Mellen v. Bunting, 327 F.3d 355, 365 (4th Cir. 2003)). The court "may address these two questions in the order . . . that will best facilitate the fair and efficient disposition of each case." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015).

Turning to the second prong, the Fourth Circuit has recognized a clearly established "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." Washington, 407 F.3d 274, 282 (4th Cir. 2005) (quotations omitted). A claim based upon such right "challenges . . . not the failure to disclose exculpatory evidence, but rather the creation of false evidence." Id. "Demonstration of a violation of [such] constitutional right requires, in this context, proof that [the defendant officers] fabricated evidence and that the fabrication resulted in a deprivation of [the plaintiff's] liberty." Id.; see Gilliam v. Sealey, 932 F.3d 216, 241 (4th Cir. 2019) (recognizing clearly established "constitutional rights

16

not to be imprisoned and convicted based on coerced, falsified, and fabricated evidence or confessions").

Here, plaintiff alleges that defendants "Holder and Munday deliberately fabricated evidence by feeding Blackmon facts about the attack on Helena Payton . . . and by exploiting the mental illness of James Blackmon to cause him to make false admissions of his involvement in the murder of Helena Payton using the facts feed [sic] to him by Holder and Munday." (Compl. (DE 1) ¶ 255). In addition, plaintiff alleges, that "[b]ased upon the false and misleading evidence Holder and Munday created in October 1983, James Blackmon was arrested on December 7, 1983, and charged with the murder of Helena Peyton" and "Blackmon's prosecution thereafter continued based upon that false and misleading evidence, result[ing] in Blackmon serving more than 35 years in prison for a crime he did not commit." (Id. ¶¶ 256-57). Based upon these allegations, plaintiff contends that defendants Holder and Munday violated a clearly established constitutional right by "intentionally caus[ing] the fabrication of false inculpatory statements when they knew, or reasonably should have known, that Plaintiff was innocent." (Mem. (DE 33) at 22).

Plaintiff's argument fails for at least two reasons. First, plaintiff's complaint does not allege that defendants Munday and Holder <u>knew</u> plaintiff was innocent. Rather, the complaint alleges: "[a]s of October 25, 1983, Holder and Munday suffered from a classic case of confirmation bias and tunnel vision. They <u>believed Blackmon had committed the murder</u>, which caused them to ignore substantial evidence of his innocence and to create a fabricate confession." (Compl. (DE 1) ¶ 154) (emphasis added). This allegation directly contradicts plaintiff's contention that defendants Holder and Munday knew he was innocent.

Second, even assuming the complaint alleges defendants Holder and Munday "reasonably should have known" plaintiff was innocent, such allegation describes a negligent mental state. <u>See</u>

17

generally BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc., 881 F.3d 293, 308 (4th Cir. 2018) (explaining that the phrase "should have known" corresponds to a negligent mental state). Importantly, "[a] plaintiff's allegations of negligence . . . by a police officer will not provide a basis for a constitutional violation." Miller v. Prince George's Cty., MD, 475 F.3d 621, 627-28 (4th Cir. 2007). Therefore, plaintiff fails to plausibly allege that defendants Holder and Munday violated a clearly established constitution right.

Defendants Holder's and Munday's motions to dismiss are granted in this part, and plaintiff's § 1983 claims asserted against defendants Holder and Munday in their individual capacities are dismissed without prejudice.

5. State Constitutional Claim

Plaintiff alleges claims for violation of his due process rights pursuant to Article I §§ 19 and 20 of the North Carolina Constitution against defendant City and defendants Munday and Holder in their official capacities.

North Carolina law provides that, "in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." Corum v. Univ. of N. Carolina Through Bd. of Governors, 330 N.C. 761, 782 (1992). An adequate state law remedy exists where there is a cause of action, at common law or created by statute, that provides plaintiff with "the possibility of relief" for the same injury alleged in the direct constitutional claim. Craig ex rel. Craig v. New Hanover Cty. Bd. of Educ., 363 N.C. 334, 340 (2009).

As stated in more detail herein, the court finds that the statute of repose set forth in North Carolina General Statute § 1-52(16) does not apply to plaintiff's negligence claim. Therefore, plaintiff's negligence claim provides an adequate state law remedy. Plaintiff concedes as much in

18

briefing. (See Mem. (DE 33) at 26) ("[U]nless and until this Court holds that the statute of repose does not apply to Plaintiff's common law negligence claim, Counts VII and VIII should not be dismissed."). Accordingly, defendants' motions to dismiss are granted in this part.

## CONCLUSION

Based on the foregoing, defendants' motions to dismiss (DE 21, 23, 30) are GRANTED IN PART and DENIED IN PART.

Plaintiff's claims for violation of his due process rights pursuant to Article I §§ 19 and 20 of the North Carolina Constitution are DISMISSED WITHOUT PREJUDICE. Plaintiff's § 1983 claims asserted against defendants Holder and Munday in their individual capacities are DISMISSED WITHOUT PREJUDICE. Plaintiff's remaining claims are ALLOWED to proceed.

Plaintiff may file a motion for leave to file amended complaint within **21 days** of the date of this order. In the event plaintiff does not file motion for leave to amend, the court will enter its initial scheduling order.

SO ORDERED, this the 8th day of July, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge