**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:20-CV-00524-FL**

| | |
|---|---|
| **JAMES BLACKMON, by and through his GUARDIAN OF THE ESTATE, PAUL TRUETT CANADY, II,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**JAMES HOLDER, in his individual capacity, ANDREW MUNDAY, in his individual capacity, and THE CITY OF RALEIGH,**<br><br>    **Defendants.** | <u>**DEFENDANT JAMES HOLDER'S ANSWER TO THE COMPLAINT (DOC. 1)**</u> |

Pursuant to Rule 12(a)(4) of the Federal Rules of Civil Procedure, Defendant James Holder ("the Answering Defendant" or "Holder"), in his individual capacity, by and through undersigned counsel, responds to Plaintiff's Complaint (Doc. 1) as follows:

<u>**FIRST DEFENSE**</u>

**(Specifically Responding to the Numbered Paragraphs of Plaintiff's Complaint)**

The Answering Defendant hereby responds to each and every paragraph of the Complaint as follows:

**INTRODUCTION**

1.    The Answering Defendant admits, upon information and belief, that James Blackmon, a/k/a Jimmy Andrew Underwood (hereinafter "Blackmon") spent 35 years, 8 months, and 15 days in prison for the murder of Helena Payton. It is further admitted, upon information and belief, that a three-judge panel convened between August 20-22, 2019 concluded that Blackmon had satisfied his burden of proof that he was factually innocent of the murder of

Helena Payton. Except as expressly admitted, the allegations contained in Paragraph 1 are denied for lack of knowledge or information sufficient to form a belief such as to admit or deny said allegations.

2.      The Answering Defendant admits that the copy of the criminal investigatory file that currently exists and was provided to his counsel (hereinafter referred to as "the criminal investigatory file" in this Answer, but always including the above caveat) includes information that Plaintiff's fingerprints did not match the latent prints lifted from the crime scene in the Payton case. Except as expressly admitted, the allegations contained in Paragraph 2 are denied as stated.

3.      The Answering Defendant admits, upon information and belief, that the North Carolina Innocence Inquiry Commission ("Commission") investigated Plaintiff's application that he was innocent of the murder of Helena Payton and that a three-judge panel convened between August 20-22, 2019 concluded that Plaintiff had satisfied his burden of proof that he was factually innocent of the murder of Helena Payton. Except as expressly admitted, the allegations contained in Paragraph 3 are denied.

4.      Upon information and belief, the allegations contained in Paragraph 4 are admitted.

5.      The Answering Defendant admits, upon information and belief, that a three-judge panel convened between August 20-22, 2019 and concluded that Blackmon had satisfied his burden of proof that he was factually innocent of the murder of Helena Payton. Except as expressly admitted, the allegations contained in Paragraph 5 are denied for lack of knowledge or information sufficient to form a belief such as to admit or deny said allegations.

6.    Holder does not have knowledge or information sufficient to form a belief such as to admit or deny the allegations contained in Paragraph 6 and thus denies the same.

7.    Holder does not have knowledge or information sufficient to form a belief such as to admit or deny the allegations contained in Paragraph 7, including therein, Footnote 1 to the Complaint, and thus denies the same.

8.    Upon information and belief, the allegations contained in Paragraph 8 are admitted.

9.    Upon information and belief, it is admitted that a three-judge panel convened between August 20-22, 2019 and concluded that Plaintiff had shown his burden of proof that he was factually innocent of the murder of Helena Payton.  Except as expressly admitted, the allegations contained in Paragraph 9 are denied.

10.   It is admitted that the criminal investigatory file includes information that (i) Helena Payton was a student at St. Augustine's College in Raleigh; (ii) she left her bedroom on the 6th floor of Latham Hall, an all-female dormitory on campus sometime between 6:10 a.m. and 6:15 a.m. on September 28, 1979, to use the bathroom; (iii) within a brief period of time, she was attacked inside the bathroom by a black male wielding a knife; (iv) she received a severe stab wound to the base of her neck; and (v) on October 30, 1979, she died in the hospital as a result of the injuries sustained during said attack.  Except as expressly admitted, the allegations contained in Paragraph 10 are denied.

11.   The Answering Defendant admits that the criminal investigatory file includes information that, according to her mother, Ms. Payton did not know who the individual was that assaulted her.  Except as expressly admitted, the allegations contained in Paragraph 11 are denied.

12.     The Answering Defendant admits that the criminal investigatory file includes information that (i) witnesses on the 6th floor of Latham Hall reported to investigators that they were awakened by the sound of Ms. Payton screaming and observed a man in the hallway attempting to exit; (ii) one witness reported to investigators that she observed the man going toward the stairwell on the east side of the building; and (iii) Jackie Kelly reported to investigators that the man walked directly toward her, and passed within a few feet of her in the hall.  Except as expressly admitted, the allegations contained in Paragraph 12 are denied.

13.     The Answering Defendant admits that the criminal investigatory file includes information that James Hardy of the Raleigh Police Department ("RPD") processed the crime scene, which included lifting latent fingerprints from the door of the bathroom stall where Ms. Payton was attacked.  Except as expressly admitted, the allegations contained in Paragraph 13 are denied.

14.     The Answering Defendant admits that the criminal investigatory file includes information that (i) a large pocket knife was found on the first floor of Latham Hall; and (ii) a knife was further described in an investigative note as, *inter alia*, being a folding lock back knife with wooden handles and a 4-7/16" blade.  Except as expressly admitted, the allegations contained in Paragraph 14 are denied.

15.     The Answering Defendant admits that RPD (i) investigated numerous suspects; (ii) pursued several tips regarding the identity of Ms. Payton's killer; (iii) asked some witnesses to view photographic arrays and live lineups of possible suspects; (iv) compared the fingerprints of numerous suspects to the latent prints lifted from the crime scene; and (v) engaged an

intuitive consultant to assist in the investigation. Except as expressly admitted, the allegations contained in Paragraph 15 are denied.

16. The Answering Defendant admits that a RPD Major Crimes Task Force went to St. Augustine's College to view the crime scene. It is further admitted that the criminal investigatory file indicates that no later than January 18, 1982, Holder and Munday were involved in the investigation of the murder of Helena Payton. Except as expressly admitted, the allegations contained in Paragraph 16 are denied.

17. The Answering Defendant admits that the criminal investigatory file includes information that, on or around February 3, 1983, RPD Detective N.S. Lockey received information that a black male subject who was a patient at Dorothea Dix Hospital was (i) talking about committing murders in Durham and Wake Counties of North Carolina, as well as New York and New Jersey; and (ii) mentioned the murder of a black female at St. Augustine College. It is further admitted that the criminal investigatory file does not appear to disclose the identity of the individual providing the information to Detective Lockey. Except as expressly admitted, the allegations contained in Paragraph 17 are denied.

18. The allegations contained in Paragraph 18 are denied as stated.

19. The Answering Defendant admits that the criminal investigatory file includes information that, on or around February 23, 1983, Lockey was advised by a second source at Dorothea Dix Hospital that Plaintiff was a voluntarily admitted patient, was believed to be extremely dangerous, and that he was known to wear the same type of shirt as the assailant had at the time of the murder of Helena Payton. Except as expressly admitted, the allegations contained in Paragraph 19 are denied.

20. The Answering Defendant admits that the criminal investigatory file includes information that on or around February 25, 1983, the City-County Bureau of Investigation ("CCBI") reported to Lockey that Plaintiff's fingerprints did not match the latent prints lifted from the crime scene in the Payton case. Except as expressly admitted, the allegations contained in Paragraph 20 are denied.

21. The Answering Defendant admits that the criminal investigatory file includes information that (i) RPD officers, but not Holder or Munday, requested information from the City of Binghamton, New York and Attica Correctional Facility in Attica, New York pertaining to Plaintiff, and that information received from the City of Binghamton pertaining to Plaintiff included records from the Binghamton Police Department, Attica Correctional, Elmira Prison, Glemham Correctional Facility, and parole records; and (ii) that those records indicated the mental health history and behavior history of Plaintiff. It is further admitted that these records are in writing and speak for themselves. Except as expressly admitted, the allegations contained in Paragraph 21 are denied.

22. The Answering Defendant admits that the criminal investigatory file includes information that, on or around September 21, 1983, pursuant to a court order, the Acting Director of Medical Records at Dorothea Dix Hospital provided Plaintiff's medical records from that facility to Holder. It is further admitted that these records are in writing and speak for themselves. Except as expressly admitted, the allegations contained in Paragraph 22 are denied.

23. The Answering Defendant admits that the criminal investigatory file includes information that Plaintiff was arrested on or around August 24, 1979 by the Binghamton Police Department in Binghamton, New York, for disorderly conduct and, when booked, was

found to be in possession of a quantity of marijuana and unknown pills. It is further admitted that the murder of Helena Payton took place on September 28, 1979. Except as expressly admitted, the allegations contained in Paragraph 23 are denied.

24.     The allegations contained in Paragraph 24 are denied.

25.     The allegations contained in Paragraph 25 are denied.

26.     The allegations contained in Paragraph 26 are denied.

27.     The Answering Defendant admits that the criminal investigatory file includes information that Plaintiff's prints did not match the latent prints lifted from the crime scene in the Payton case. Except as expressly admitted, the allegations contained in Paragraph 27 are denied.

28.     The Answering Defendant admits that the criminal investigatory file includes information that on or around September 26, 1983, he, along with Detective Munday, met with Jackie Kelly at Fort Benning, Georgia, where Lt. Kelly was serving in the Army. It is further admitted that the criminal investigatory file includes information that, when shown a photographic line-up she immediately pulled Blackmon's photograph and laid it to the side. Except as expressly admitted, the allegations contained in Paragraph 28 are denied.

29.     The allegations contained in Paragraph 29 are denied.

30.     The allegations contained in Paragraph 30 are denied.

31.     The Answering Defendant admits that he and Munday interviewed Plaintiff on more than one occasion in connection with the Payton murder. Except as expressly admitted, the allegations contained in Paragraph 31 are denied.

32.     The allegations contained in Paragraph 32 are denied.

33.     The Answering Defendant admits, upon information and belief, that Dr. Edward Landis appeared before the Innocence Commission in its proceedings pertaining to Plaintiff, provided testimony thereto, and that the testimony was transcribed by a court reporter. The Answering Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 33 and therefore denies said allegations.

34.     The Answering Defendant admits, upon information and belief, that Dr. Edward Landis appeared before the Innocence Commission in its proceedings pertaining to Plaintiff, provided testimony thereto, and that the testimony was transcribed by a court reporter. The Answering Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 34 and therefore denies said allegations.

35.     The Answering Defendant admits that the criminal investigatory file includes information that Plaintiff's fingerprints did not match the latent prints lifted from the crime scene in the Payton case. It is further admitted, upon information and belief, that Renee Minella appeared before the Innocence Commission in its proceeding pertaining to Plaintiff, provided testimony thereto, and that the testimony was transcribed by a court reporter. The Answering Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 35 and therefore denies said allegations.

36.     The Answering Defendant admits, upon information and belief, that Renee Minella appeared before the Innocence Commission in its proceeding pertaining to Plaintiff, provided testimony thereto, and that the testimony was transcribed by a court reporter. The Answering Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 36 and therefore denies said allegations.

37.     The Answering Defendant denies the allegations that he at any point "focused exclusively on Blackmon" in his investigation and the characterization that he "<u>failed</u> to run the latent print [of James Leach] from the crime scene through any database." (Emphasis added.) The Answering Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 37 and therefore denies said allegations.

38.     The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 38 and therefore denies said allegations.

39.     The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 39 and therefore denies said allegations.

40.     The Answering Defendant admits, upon information and belief, that Jackie Kelly appeared before the Innocence Commission in its proceeding pertaining to Plaintiff, provided testimony thereto, and that the testimony was transcribed by a court reporter. The Answering Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 40 and therefore denies said allegations.

41.     The allegations contained in Paragraph 41 are denied.

42.     Paragraph 42 does not allege any facts to which a response is required. To the extent a response is required, the Answering Defendant admits that Plaintiff has brought this action as alleged in Paragraph 42, but denies that he is entitled to any relief sought. It is further admitted that, as a result of the Court's order dated July 8, 2021, the only claim remaining as to the Answering Defendant is a negligence claim, which again the Answering Defendant denies. Except as expressly admitted, the allegations contained in Paragraph 42 are denied.

**PARTIES**

43.    The Answering Defendant admits, upon information and belief, that Plaintiff is an individual named James Blackmon who resides in North Carolina, and that he was arrested under that name.  The Answering Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 43 and therefore denies said allegations.

44.    The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 44 and therefore denies said allegations.

45.    The Answering Defendant admits that, as of the dates alleged in the Complaint, he (i) was a resident of Wake County, North Carolina; (ii) was employed as a detective with the RPD and was assigned, with others, to investigate the September 28, 1979 murder of Helena Payton; and (iii) was acting within the scope of his official duties and under color of law in doing so.  It is further admitted that he is a person.  Except as expressly admitted, the allegations contained in Paragraph 45 are denied.

46.    Paragraph 46 is not directed to the Answering Defendant, but rather another defendant appearing in this action, and thus no response from him is required.  To the extent a response is required, the allegations contained in Paragraph 46 are denied.

47.    Paragraph 47 is not directed to the Answering Defendant, but rather another defendant appearing in this action, and thus no response from him is required.  To the extent a response is required, the allegations contained in Paragraph 47 are denied.

**JURISDICTION AND VENUE**

48.    Paragraph 48 contains legal conclusions to which no response is required.  To the extent a response is required, at the time of the filing of this Answer, the allegations contained in Paragraph 48 are admitted.

49.    Paragraph 49 contains legal conclusions to which no response is required. To the extent a response is required, at the time of the filing of this Answer, the allegations contained in Paragraph 49 are admitted.

50.    Paragraph 50 contains legal conclusions to which no response is required. To the extent a response is required, at the time of the filing of this Answer, the allegations contained in Paragraph 50 are admitted.

**JURY DEMAND**

51.    Paragraph 51 does not allege any facts to which a response is required. To the extent a response is required, it is admitted that Plaintiff has requested a jury trial.

**FACTS**

52.    The Answering Defendant admits that the criminal investigatory file includes information that, on September 28, 1979, Helena Payton lived on the campus of St. Augustine College in Raleigh, North Carolina, and that she resided in Room 608 on the 6th floor of Latham Hall dormitory with her roommate, Elvin Euvonne Turner. Except as expressly admitted, the allegations contained in Paragraph 52 are denied.

53.    The Answering Defendant admits that the criminal investigatory file includes information that Ms. Turner made a report to RPD, which said report is summarized in part in the allegations contained in Paragraph 53. Except as expressly admitted, the allegations contained in Paragraph 53 are denied.

54.    Upon information and belief, the allegations contained in Paragraph 54 are admitted.

55.    The Answering Defendant admits that the criminal investigatory file includes information that Ms. Turner made a report to RPD, which said report is summarized in part in the allegations contained in Paragraph 55. Except as expressly admitted, the allegations contained in Paragraph 55 are denied.

56. The Answering Defendant admits that the criminal investigatory file includes information that Ms. Turner made a report to RPD, which said report is summarized in part in the allegations contained in Paragraph 56. Except as expressly admitted, the allegations contained in Paragraph 56 are denied.

57. The Answering Defendant admits that the criminal investigatory file includes information which indicates that more than one student residing on the 6th floor of Latham Hall reported to RPD that Ms. Payton's screams awakened them. Except as expressly admitted, the allegations contained in Paragraph 57 are denied.

58. The Answering Defendant admits that the criminal investigatory file includes information that Ms. Avent made a report to RPD, which said report is summarized in part in the allegations contained in Paragraph 58. Except as expressly admitted, the allegations contained in Paragraph 58 are denied.

59. The Answering Defendant admits that the criminal investigatory file includes information that Ms. Kelly made a report to RPD, which said report is summarized in part in that she resided in Room 602. Except as expressly admitted, the allegations contained in Paragraph 59 are denied.

60. The Answering Defendant admits that the criminal investigatory file includes information from Ms. Kelly which indicates that she reported to RPD (i) when she heard screaming she got out of her bed, opened the door to her room, and stepped into the hallway; (ii) she saw a black male come out of the bathroom into the hallway and walk directly toward her; (iii) he "passed within a few feet" of her in the hallway; and (iv) turned left and walked toward the elevator. Except as expressly admitted, the allegations contained in Paragraph 60 are denied.

61. The Answering Defendant admits that the criminal investigatory file includes information that Ms. Kelly made a report to RPD, which said report is summarized in part in the allegations contained in Paragraph 61. Except as expressly admitted, the allegations contained in Paragraph 61 are denied.

62. The Answering Defendant admits that the criminal investigatory file includes information that Ms. Kelly, based on her statement, saw "the subject at a very close distance" and "got a very good chance to observe the suspect. She feels she will definitely know this subject if she were to see him again." Except as expressly admitted, the allegations contained in Paragraph 62 are denied.

63. The Answering Defendant admits that the criminal investigatory file includes information that Ms. Goldring made a report to RPD, which said report is summarized in part in the allegations contained in Paragraph 63. Except as expressly admitted, the allegations contained in Paragraph 63 are denied.

64. The Answering Defendant admits that the criminal investigatory file includes information that Ms. Lee made a report to RPD, which said report is summarized in part in the allegations contained in Paragraph 64. Except as expressly admitted, the allegations contained in Paragraph 64 are denied.

65. The Answering Defendant admits that the criminal investigatory file includes information that Ms. Collins and/or Ms. Hussey made a report to RPD, which said report is summarized in part in the allegations contained in Paragraph 65. Except as expressly admitted, the allegations contained in Paragraph 65 are denied.

66. The Answering Defendant admits that the criminal investigatory file includes information that Ms. Wilson made a report to RPD, which said report is summarized in part in the

allegations contained in Paragraph 66.  Except as expressly admitted, the allegations contained in Paragraph 66 are denied.

67.     The Answering Defendant admits that the criminal investigatory file includes information that Mr. Judkins made a report to RPD, which said report is summarized in part in the allegations contained in Paragraph 67.  Except as expressly admitted, the allegations contained in Paragraph 67 are denied.

68.     The Answering Defendant admits that the criminal investigatory file includes information that Ms. Best reported to RPD that she looked out her window at about 7 a.m. or 7:30 a.m. and saw a black male come out of the woods right behind Cheshire Hall, and that she described the subject as about 6'2" and slim.  Except as expressly admitted, the allegations contained in Paragraph 61 are denied.

69.     The Answering Defendant admits that the criminal investigatory file includes information that Ms. Underdue (i) resided in Room 403 on the 4th floor of Latham Hall; and (ii) made a report to RPD that she was at a bus stop on Oakwood and Tarboro Streets at about 7:05 a.m. on the morning of September 28, 1979, when she saw a black male about 6'3" to 6'5" with an athletic build heading west on Oakwood Avenue and turn left on the first street off Oakwood Avenue.  Except as expressly admitted, the allegations contained in Paragraph 69 are denied.

70.     The Answering Defendant admits that the criminal investigatory file includes information that is summarized by the allegations contained in Paragraph 70.  Except as expressly admitted, the allegations contained in Paragraph 70 are denied.

71.     The Answering Defendant admits that the criminal investigatory file includes information which indicates that (i) on or around September 28, 1979, a St. Augustine's security officer

"found a maroon darshica with gold trim about 104 yards due west of the northwest corner of Cheshire Dorm"; and (ii) according to a laboratory report dated October 18, 1979, human blood was found on the dashiki shirt. Except as expressly admitted, the allegations contained in Paragraph 71 are denied.

72.     The Answering Defendant admits that the criminal investigatory file includes information that (i) a large pocket knife was found on the first floor of Latham Hall; (ii) a knife was further described in an investigative note as, *inter alia*, being a folding lock back knife with wooden handles and a 4-7/16" blade; (iii) according to a laboratory report dated October 18, 1979, human blood was found on the knife; and (iv) no latent prints could be developed from the knife. Except as expressly admitted, the allegations contained in Paragraph 72 are denied.

73.     The Answering Defendant admits that the criminal investigatory file includes information that is summarized by the allegations contained in Paragraph 73. Except as expressly admitted, the allegations contained in Paragraph 73 are denied.

74.     The Answering Defendant admits that the criminal investigatory file includes information that is summarized by the allegations contained in Paragraph 74. Except as expressly admitted, the allegations contained in Paragraph 74 are denied.

75.     Upon information and belief, the allegations contained in Paragraph 75 are admitted.

76.     The Answering Defendant admits that the criminal investigatory file includes information that is summarized by that the investigation of the murder of Helena Payton was ongoing. Except as expressly admitted, the allegations contained in Paragraph 76 are denied.

77.     The Answering Defendant admits that the criminal investigatory file includes information which indicates that photo arrays containing possible suspects were shown to Viola

Underdue, Barbara Lee, Jackie Kelly, Vivian Best, Carolyn Wilson, and Elvin Turner. Except as expressly admitted, the allegations contained in Paragraph 77 are denied.

78. The Answering Defendant admits that the criminal investigatory file includes information which indicates that, prior to April 24, 1981, live lineups containing possible suspects were shown to Carolyn Wilson, Elvin Turner, and Jackie Kelly. Except as expressly admitted, the allegations contained in Paragraph 78 are denied.

79. The Answering Defendant admits that the criminal investigatory file includes information which indicates that the CCBI performed multiple fingerprint comparisons between various suspects and the latent prints lifted from the crime scene. Except as expressly admitted, the allegations contained in Paragraph 79 are denied.

80. The Answering Defendant admits that the criminal investigatory file includes information which indicates that the CCBI performed multiple fingerprint comparisons between various suspects and the latent prints lifted from the crime scene. Except as expressly admitted, the allegations contained in Paragraph 80 are denied.

81. The allegations contained in Paragraph 81 are denied.

82. The Answering Defendant admits that the criminal investigatory file includes information which indicates that RPD received various tips related to the murder of Helena Payton. Except as expressly admitted, the allegations contained in Paragraph 82 are denied.

83. The allegations contained in Paragraph 83 are denied.

84. The Answering Defendant admits that, as of February 1981, the investigation into the murder of Helena Payton was not solved. Except as expressly admitted, the allegations contained in Paragraph 84 are denied.

85. The Answering Defendant admits that a RPD Major Crimes Task Force went to St. Augustine's College to view the crime scene. It is further admitted that the criminal investigatory file indicates that no later than January 18, 1982, Holder and Munday were involved in the investigation of the murder of Helena Payton. Except as expressly admitted, the allegations contained in Paragraph 85 are denied.

86. The Answering Defendant admits that the criminal investigatory file includes information which indicates that, in or around January 1982, RPD engaged an intuitive consultant by the name of Dykshoorn to assist in the investigation. Except as expressly admitted, the allegations contained in Paragraph 86 are denied.

87. The Answering Defendant admits that the criminal investigatory file includes information which indicates that Holder's name appears on a report connected to the intuitive consultant's field work from on or around January 19, 1982. Except as expressly admitted, the allegations contained in Paragraph 87 are denied.

88. The Answering Defendant admits that the criminal investigatory file includes information which indicates that, in or around January 1982, RPD engaged an intuitive consultant by the name of Dykshoorn to assist in the investigation and that he formed an opinion on the investigation. Except as expressly admitted, the allegations contained in Paragraph 88 are denied.

89. The allegations contained in Paragraph 89 are denied as stated.

90. The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 90 and therefore denies said allegations.

91. The Answering Defendant admits that the criminal investigatory file includes information which indicates that, on or around July 22, 1982, Holder and Munday interviewed Dr.

Wiley Davis and Chief Adams of St. Augustine's College and they indicated that "the psychic's composite looked like one of the male students involved in this case." Except as expressly admitted, the allegations contained in Paragraph 91 are denied.

92. The Answering Defendant admits that an arrest did not result from the work of the intuitive consultant. Except as expressly admitted, the allegations contained in Paragraph 92 are denied.

93. The Answering Defendant admits that the criminal investigatory file includes information which indicates that theories involving the attacker's motive were explored by RPD, including but not limited to whether illegal activity was taking place in the subject dormitory. Except as expressly admitted, the allegations contained in Paragraph 93 are denied.

94. The Answering Defendant admits that the criminal investigatory file includes information that is summarized by the allegations contained in Paragraph 94. Except as expressly admitted, the allegations contained in Paragraph 94 are denied.

95. The allegations contained in Paragraph 95 are denied as stated.

96. The Answering Defendant admits that Lockey was a RPD detective in 1983 and, upon information and belief, that he passed away. The Answering Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 96 and therefore denies said allegations.

97. The Answering Defendant admits that the criminal investigatory file includes information that, on or around February 3, 1983, RPD Detective N.S. Lockey received information that a black male subject who was a patient at Dorothea Dix Hospital:

> mentioned a murder of a black female at St. Augustine College and had mentioned a murder of a black female in Durham, North Carolina. The suspect talked about murdering other black females in Wake County (at least three) and at least two (2) murders in New York and New Jersey. (All black females) The suspect was described as a black male with a close cropped afro and a close cropped mustache and beard. He was described as tall and muscular and that the suspect was very personable and the type that would not hesitate to talk to you if you met him on the street. The suspect was supposed to have been very graphic in his description of how he killed these women. He was supposed to have been very violet (sic) and brutal and liked to cut women and supposedly to have make (sic) a statement about how he liked to feel the knife go in. He also made statements as to how much he loved his knife.

Except as expressly admitted, the allegations contained in Paragraph 97 are denied.

98.    The Answering Defendant admits that the criminal investigatory file includes information that is summarized by the allegations contained in Paragraph 98. Except as expressly admitted, the allegations contained in Paragraph 98 are denied.

99.    The Answering Defendant admits that the criminal investigatory file does not include (i) the identity of Lockey's source; (ii) whether the person was male or female; (iii) whether the source had provided reliable information in the past; (iv) whether the source was a mentally-ill patient receiving treatment at Dix; or (v) elaboration on the reason why the individual mistrusted police. Except as expressly admitted, the allegations contained in Paragraph 99 are denied.

100.    The Answering Defendant admits that the criminal investigatory file includes information that is summarized by the allegations contained in Paragraph 100. Except as expressly admitted, the allegations contained in Paragraph 100 are denied.

101.    The Answering Defendant admits that the criminal investigatory file includes information that is summarized by the allegations contained in Paragraph 101. Except as expressly admitted, the allegations contained in Paragraph 101 are denied.

102.    The Answering Defendant admits that the criminal investigatory file includes information that is summarized by the allegations contained in Paragraph 102. Except as expressly admitted, the allegations contained in Paragraph 102 are denied.

103.    The Answering Defendant admits that the criminal investigatory file includes information that Plaintiff had been convicted of larceny in Robeson County, "[s]upposedly this was a larceny of cookies from a grocery store according to his file," and he was imprisoned on this charge from December 30, 1980 until June 23, 1981 at Central Prison and he was "a discipline problem while in custody." Except as expressly admitted, the allegations contained in Paragraph 103 are denied.

104.    The Answering Defendant admits that the criminal investigatory file includes information that is summarized by the allegations contained in Paragraph 104. Except as expressly admitted, the allegations contained in Paragraph 104 are denied.

105.    The Answering Defendant admits that the criminal investigatory file includes information that is summarized by the allegations contained in Paragraph 105. Except as expressly admitted, the allegations contained in Paragraph 105 are denied.

106.    The Answering Defendant admits that the criminal investigatory file includes information that is summarized by the allegations contained in Paragraph 106. Except as expressly admitted, the allegations contained in Paragraph 106 are denied.

107.    The Answering Defendant admits that the criminal investigatory file includes information that Plaintiff's fingerprints did not match the latent prints lifted from the crime scene in the Payton case. Except as expressly admitted, the allegations contained in Paragraph 107 are denied.

108.    The Answering Defendant admits that the criminal investigatory file includes information that is summarized by the allegations contained in Paragraph 108.  Except as expressly admitted, the allegations contained in Paragraph 108 are denied.

109.    The Answering Defendant admits that the criminal investigatory file includes information that is summarized by the allegations contained in Paragraph 109.  Except as expressly admitted, the allegations contained in Paragraph 109 are denied.

110.    The Answering Defendant admits that the criminal investigatory file includes information that is summarized by the allegations contained in Paragraph 110.  Except as expressly admitted, the allegations contained in Paragraph 110 are denied.

111.    The allegations contained in Paragraph 111, including the footnote therein, are denied.

112.    The allegations contained in Paragraph 112 are denied.

113.    The allegations contained in Paragraph 113 are denied.

114.    The allegations contained in Paragraph 114 are denied.

115.    The Answering Defendant admits that the criminal investigatory file contains at least a portion of Plaintiff's medical records apparently created by various entities in the State of New York and that these documents speak for themselves.  Except as expressly admitted, the allegations contained in Paragraph 115 are denied.

116.    The Answering Defendant admits that the criminal investigatory file contains records from the Elmira Reception Center and that these documents speak for themselves.  Except as expressly admitted, the allegations contained in Paragraph 116 are denied.

117.    The Answering Defendant admits that the criminal investigatory file contains records from the Elmira Reception Center and that these documents speak for themselves.  Except as expressly admitted, the allegations contained in Paragraph 117 are denied.

118.     The Answering Defendant admits that the criminal investigatory file contains a letter dated July 31, 1974 from Chief of the Psychiatric Unit at Attica Correctional Facility and that this letter is a document which speaks for itself.  Except as expressly admitted, the allegations contained in Paragraph 118 are denied.

119.     The Answering Defendant admits that the criminal investigatory file contains records from the Glemham Correctional Facility and that these documents speak for themselves.  Except as expressly admitted, the allegations contained in Paragraph 119 are denied.

120.     The allegations contained in Paragraph 120 are denied.

121.     The Answering Defendant admits that the criminal investigatory file contains at least a portion of Plaintiff's arrest record from on or around February 1, 1978 from the Bureau of Police in Binghamton, NY, and that this document speaks for itself.  Except as expressly admitted, the allegations contained in Paragraph 121 are denied.

122.     The Answering Defendant admits that the criminal investigatory file contains at least a portion of Plaintiff's arrest record from on or around May 10, 1978 from the Bureau of Police in Binghamton, NY, and that this document speaks for itself.  Except as expressly admitted, the allegations contained in Paragraph 122 are denied.

123.     The Answering Defendant admits that the criminal investigatory file contains at least a portion of Plaintiff's arrest record from on or around August 24, 1979 from the Bureau of Police in Binghamton, NY, and that this document speaks for itself.  Except as expressly admitted, the allegations contained in Paragraph 123 are denied.

124.     The Answering Defendant admits that the criminal investigatory file contains a report related to an interview with SBI Agent Dave Keller wherein it is indicated that Agent Keller is assigned to an investigation involving an alleged assault on Plaintiff by two technicians

at Dix.  Except as expressly admitted, the allegations contained in Paragraph 124 are denied.

125.    The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 125, including the footnote therein, and therefore denies said allegations.

126.    The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 126 and therefore denies said allegations.

127.    The Answering Defendant admits that the criminal investigatory file contains a report related to an interview with SBI Agent Dave Keller from on or around July 21, 1983, and that the report bears Holder's name.  Except as expressly admitted, the allegations contained in Paragraph 127, including the footnote therein, are denied.

128.    The Answering Defendant admits that the criminal investigatory file contains a report related to an interview with SBI Agent Dave Keller from on or around July 21, 1983 and that the report bears Holder's name.  It is further admitted that the report purports to contain information that Keller reported to Holder, including that (i) Plaintiff "told… Keller that the reason he was at Dorothea Dix Hospital was that he had pulled a woman into a bathroom and exposed himself to her. This, according to [Plaintiff] was to have occurred in a library located in the Garner, North Carolina area. The victim was a librarian"; and (ii) "[Plaintiff] made the statement that he felt like hurting people when he sees the devil coming out of them. To his own admission, he smeared his body with feces."  Except as expressly admitted, the allegations contained in Paragraph 128 are denied.

129.    The Answering Defendant admits that the criminal investigatory file contains a report related to an interview with SBI Agent Dave Keller from on or around July 21, 1983 and

that the report bears Holder's name. It is further admitted that the report contains information that Plaintiff "was out on the street in September of 1979." It is further admitted that the report does not indicate where Plaintiff was living in September 1979. Except as expressly admitted, the allegations contained in Paragraph 129 are denied.

130. The Answering Defendant admits that the criminal investigatory file contains a report related to an interview with Barbara Richburg from on or around August 24, 1983 and that the report indicates that Holder and Munday participated in the interview. It is further admitted that the report purports to contain Ms. Richburg's recounting of the incident wherein Plaintiff exposed himself to her at her place of work. Except as expressly admitted, the allegations contained in Paragraph 130 are denied.

131. The Answering Defendant admits that the criminal investigatory file contains a report related to an interview with Emma Williams' sister, Yvette Peebles, from on or around August 24, 1983 and that the report indicates that Holder and Munday participated in the interview. It is further admitted that the report purports to contain Ms. Peebles' estimate of when Plaintiff moved in with Ms. Williams—"about a year and a half of two years ago." Except as expressly admitted, the allegations contained in Paragraph 131 are denied.

132. The Answering Defendant admits that the criminal investigatory file contains a report related to an interview with Emma Williams, from on or around August 29, 1983 and that the report indicates that Holder and Munday participated in the interview, along with the Chief of Security at Dix. It is further admitted that the report purports to contain Ms. Williams' estimate of when she was introduced to Plaintiff. Except as expressly admitted, the allegations contained in Paragraph 132 are denied.

133. The Answering Defendant admits that the criminal investigatory file contains a report related to an interview with Emma Williams, from on or around August 29, 1983 and that the report indicates that Holder and Munday participated in the interview, along with the Chief of Security at Dix. Except as expressly admitted, the allegations contained in Paragraph 133 are denied.

134. The Answering Defendant admits that the criminal investigatory file contains a report related to an interview with Emma Williams, from on or around August 29, 1983 and that the report indicates that Holder and Munday participated in the interview, along with the Chief of Security at Dix. It is further admitted that the report contains a question posed to Ms. Williams regarding dashikis, and she responded in the negative. Except as expressly admitted, the allegations contained in Paragraph 134 are denied.

135. The Answering Defendant admits that the criminal investigatory file contains a report related to an interview with Emma Williams from on or around August 29, 1983 and that the report indicates that Holder and Munday participated in the interview, along with the Chief of Security at Dix. It is further admitted that the report contains the following excerpt of an exchange with Ms. Williams related to Plaintiff's driving ability:

| | |
|---|---|
| Q. | Back during the seven months that you knew Jimmy, did he drive? |
| A. | No, he can't drive. |
| Q. | He can't drive? |
| A. | No. |
| Q. | What do you mean he can't drive? |
| A. | I mean he hasn't any license. He never learned how to drive. |
| Q. | How did he get around? |
| A. | Walked, or thumbed. |
| | *      *      * |
| Q. | You never seen Jimmy drive any time? |
| A. | Yeah, he drove my car one time out there at the license place, you know, parking lot, but he couldn't drive. |
| Q. | Have you ever seen him drive on the road? |
| A. | No. |
| Q. | Could he drive a car if he wanted to? |
| A. | I don't think so. |

Except as expressly admitted, the allegations contained in Paragraph 135 are denied.

136. The Answering Defendant admits that the criminal investigatory file contains a report related to an interview with Emma Williams from on or around August 29, 1983 and that the report indicates that Holder and Munday participated in the interview, along with the Chief of Security at Dix. Except as expressly admitted, the allegations contained in Paragraph 136 are denied.

137. The Answering Defendant admits that the criminal investigatory file contains a report related to an interview with Emma Williams from on or around August 29, 1983 and that the report indicates that Holder and Munday participated in the interview, along with the Chief of Security at Dix. It is further admitted that the report contains a question posed to Ms. Williams regarding whether she ever observed Plaintiff carry a knife, and she responded in the negative. Except as expressly admitted, the allegations contained in Paragraph 137 are denied.

138. The Answering Defendant admits that the criminal investigatory file contains a report related to an interview with Emma Williams from on or around August 29, 1983 and that the report indicates that Holder and Munday participated in the interview, along with the Chief of Security at Dix. It is further admitted that the report contains a question posed to Ms. Williams regarding whether she ever observed Plaintiff with a beard, and she responded in the affirmative and indicated that he had one when they first met. Except as expressly admitted, the allegations contained in Paragraph 138 are denied.

139. The Answering Defendant admits that the criminal investigatory file contains a report related to an interview with Jackie Kelly, from on or around September 26, 1983 and that the report indicates that Holder and Munday participated in the interview and that the

interview took place in Fort Benning, Georgia. The report also indicates that Ms. Kelly was then-stationed at Fort Benning as a lieutenant in the U.S. Army and that RPD officer W.M. Parker conducted a Psychological Stress Evaluation Test ("PSET") upon Ms. Kelly that same date. Except as expressly admitted, the allegations contained in Paragraph 139 are denied.

140.  The Answering Defendant admits that the criminal investigatory file contains a report related to an interview with Jackie Kelly, from on or around September 26, 1983 and that the report indicates that Holder and Munday participated in the interview and that the interview took place in Fort Benning, Georgia. It is further admitted that the report contains what Ms. Kelly reported as her recollection of her observations on the morning of the Helena Payton murder. Except as expressly admitted, the allegations contained in Paragraph 140 are denied.

141.  The Answering Defendant admits that the criminal investigatory file contains a report related to an interview with Jackie Kelly, from on or around September 26, 1983 and that the report indicates that Holder and Munday participated in the interview and that the interview took place in Fort Benning, Georgia. It is further admitted that the report indicates Ms. Kelly (i) viewed a photo array wherein "[s]he immediately pulled Blackman's photo and laid it to the side…" and "[a]fter going through the photos several times she pulled out one more picture of Barry Chavis"; (ii) "stated these two (2) looked like they could possibly be the suspect"; and (iii) "stated Blackman's appearance looked good but he appeared heavier in that picture than what she remembered the suspect being." Except as expressly admitted, the allegations contained in Paragraph 141 are denied.

142.    The Answering Defendant admits that the criminal investigatory file indicates that RPD officer W.M. Parker conducted a PSET upon Ms. Kelly after she viewed the photo array on September 26, 1983. It is further admitted that the report indicates that, when asked whether she "positively recognize[d] the suspect in photographs that were shown to you this morning," she answered in the negative. It is further admitted that the report indicates that, in Parker's opinion, Plaintiff believed the answers she gave to him were truthful. Except as expressly admitted, the allegations contained in Paragraph 142 are denied.

143.    The Answering Defendant admits that the criminal investigatory file includes information that, on or around September 21, 1983, pursuant to a court order, the Acting Director of Medical Records at Dorothea Dix Hospital provided Plaintiff's medical records from that facility to Holder. Except as expressly admitted, the allegations contained in Paragraph 143 are denied.

144.    The Answering Defendant admits that the criminal investigatory file includes information that, on or around September 21, 1983, pursuant to a court order, the Acting Director of Medical Records at Dorothea Dix Hospital provided Plaintiff's medical records from that facility to Holder. It is further admitted that these records are in writing and speak for themselves. Except as expressly admitted, the allegations contained in Paragraph 144 are denied.

145.    The Answering Defendant admits that the criminal investigatory file includes information that, on or around September 21, 1983, pursuant to a court order, the Acting Director of Medical Records at Dorothea Dix Hospital provided Plaintiff's medical records from that facility to Holder. It is further admitted that these records are in writing and speak for

themselves. Except as expressly admitted, the allegations contained in Paragraph 145, including each and every subpart, are denied.

146. The Answering Defendant admits that the criminal investigatory file includes information that, on or around September 21, 1983, pursuant to a court order, the Acting Director of Medical Records at Dorothea Dix Hospital provided Plaintiff's medical records from that facility to Holder. It is further admitted that these records are in writing and speak for themselves. Except as expressly admitted, the allegations contained in Paragraph 146, including each and every subpart, are denied.

147. The allegations contained in Paragraph 147 are denied.

148. The allegations contained in Paragraph 148, including each and every subpart, are denied as stated.

149. The allegations contained in Paragraph 149 are denied.

150. The allegations contained in Paragraph 150 are denied.

151. The allegations contained in Paragraph 151 are denied.

152. The allegations contained in Paragraph 152, including each and every subpart, are denied as stated.

153. The allegations contained in Paragraph 153 are denied.

154. The allegations contained in Paragraph 154 are denied.

155. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 155 are denied.

156. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 156 are denied.

157. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 157 are denied.

158. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 158 are denied.

159. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 159 are denied.

160. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 160 are denied.

161. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing

and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 161 are denied.

162. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 162 are denied.

163. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 163 are denied.

164. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 164 are denied.

165. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 165 are denied.

166. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 166 are denied.

167.	The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 167 are denied.

168.	The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 168 are denied.

169.	The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 169 are denied.

170.	The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 170 are denied.

171.	The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 171 are denied.

172.	The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 25, 1983. Such record is in writing

and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 172 are denied.

173. The Answering Defendant admits, upon information and belief, that he and Munday took Plaintiff to St. Augustine's College on or around October 25, 1983. Except as expressly admitted, the allegations contained in Paragraph 173 are denied.

174. The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 174 and therefore denies said allegations.

175. The Answering Defendant admits that an investigative note dated October 25, 1983 indicates that Plaintiff (i) "was observed by Detective Holder and Detective Munday talking with several male and female students"; and (ii) "was on his own, and he stayed gone at times out of sight of Detectives Holder and Munday, for approximately 35 minutes before returning to the car." It is further admitted that there are no handwritten notes about the contents of any conversation between Plaintiff and the "several male and female students" he interacted with according to the investigative note. Except as expressly admitted, the allegations contained in Paragraph 175 are denied.

176. The Answering Defendant admits that an investigative note dated October 25, 1983 indicates that Plaintiff was introduced to Chief Adams, the Security Chief for St. Augustine. The Answering Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 176 and therefore denies said allegations.

177. The Answering Defendant admits that an investigative note dated October 25, 1983 indicates that, as they left campus, Plaintiff responded in the affirmative when asked by Munday if anything looked familiar. Except as expressly admitted, the allegations contained in Paragraph 177 are denied.

178. The Answering Defendant admits that an investigative note dated October 25, 1983 includes information that is summarized in part by the allegations contained in Paragraph 178. Except as expressly admitted, the allegations contained in Paragraph 178 are denied.

179. The Answering Defendant admits that an investigative note dated October 25, 1983 indicates that, as they left campus, Plaintiff suddenly said "That's the girl's dorm. That's the girl's dorm," pointing to Latham Hall, further indicating, "I have been there before." Except as expressly admitted, the allegations contained in Paragraph 179 are denied.

180. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 9:35 a.m. Such record is in writing and speaks for itself. It is further admitted that Plaintiff voluntarily came to the police station on October 26, 1983 to see Holder and Munday. Except as expressly admitted, the allegations contained in Paragraph 180 are denied.

181. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 9:35 a.m. Such record is in writing and speaks for itself. It is further admitted that this record indicates that Plaintiff, the Answering Defendant, and Munday went to McDonald's to eat. The Answering Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 181 and therefore denies said allegations.

182. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 9:35 a.m. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 182 are denied.

183. The allegations contained in Paragraph 183 are denied.

184. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 9:35 a.m. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 184 are denied.

185. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 9:35 a.m. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 185 are denied.

186. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 9:35 a.m. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 186 are denied.

187. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 9:35 a.m. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 187 are denied.

188. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 9:35 a.m. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 188 are denied.

189. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 9:35 a.m. Such record

is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 189 are denied.

190.     The Answering Defendant admits that an investigative note dated October 26, 1983 indicates that Plaintiff, Holder, and Munday returned to St. Augustine's College that day and visited Latham Hall, the dormitory where Helena Payton was murdered. It is admitted that the report indicates that Plaintiff had freedom of movement, particularly on the specific hall on which the murder took place. The Answering Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 190 and therefore denies said allegations.

191.     The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983. Such record is in writing and speaks for itself. It is further admitted that an investigative note dated October 26, 1983 indicates that Plaintiff, Holder, and Munday returned to St. Augustine's College that day and visited Latham Hall, the dormitory where Helena Payton was murdered, and that it indicates in part that "Blackman requested earlier that he had wanted to show these investigators where he went in Latham Hall and also show them what he did and where it happened." Except as expressly admitted, the allegations contained in Paragraph 191 are denied.

192.     The Answering Defendant admits that an investigative note dated October 26, 1983 indicates that Plaintiff, Holder, and Munday returned to St. Augustine's College that day and visited Latham Hall, the dormitory where Helena Payton was murdered. It is further admitted that the record indicates Plaintiff "looked like [he] was avoiding going into and looking at the bathroom area," and "[a]t this time Holder asked Blackman to look into the

bathroom to see if it looked familiar to him." Except as expressly admitted, the allegations contained in Paragraph 192 are denied.

193. The Answering Defendant admits that an investigative note dated October 26, 1983 indicates that Plaintiff, Holder, and Munday returned to St. Augustine's College that day and visited Latham Hall, the dormitory where Helena Payton was murdered. It is further admitted that the record indicates that Plaintiff demonstrated how he recalled exiting the scene of the crime. Except as expressly admitted, the allegations contained in Paragraph 193 are denied.

194. The Answering Defendant admits that an investigative note dated October 26, 1983 indicates that Plaintiff, Holder, and Munday returned to St. Augustine's College that day and visited Latham Hall, the dormitory where Helena Payton was murdered. It is further admitted that, afterwards, Plaintiff continued to volunteer to be interviewed by Holder and Munday that afternoon. Except as expressly admitted, the allegations contained in Paragraph 194 are denied.

195. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 12:32 p.m. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 195 are denied.

196. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 12:32 p.m. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 196 are denied.

197.   The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 12:32 p.m.  Such record is in writing and speaks for itself.  Except as expressly admitted, the allegations contained in Paragraph 197 are denied.

198.   The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 12:32 p.m.  Such record is in writing and speaks for itself.  Except as expressly admitted, the allegations contained in Paragraph 198 are denied.

199.   The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 12:32 p.m.  Such record is in writing and speaks for itself.  Except as expressly admitted, the allegations contained in Paragraph 199 are denied.

200.   The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 12:32 p.m.  Such record is in writing and speaks for itself.  Except as expressly admitted, the allegations contained in Paragraph 200 are denied.

201.   The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 12:32 p.m.  Such record is in writing and speaks for itself.  Except as expressly admitted, the allegations contained in Paragraph 201 are denied.

202.   The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 12:32 p.m.  Such record

is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 202 are denied.

203. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 12:32 p.m. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 203 are denied.

204. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 12:32 p.m. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 204 are denied.

205. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 12:32 p.m. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 205 are denied.

206. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 12:32 p.m. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 206 are denied.

207. The Answering Defendant admits that there is a record reflecting an interview taken by Holder and Munday of Plaintiff on or around October 26, 1983 at 12:32 p.m. Such record is in writing and speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 207 are denied.

208. The allegations contained in Paragraph 208 are denied.

209. The Answering Defendant admits that the criminal investigatory file includes information from Ms. Kelly which indicates that she resided in Room 602 of Latham Hall at the time of the murder of Helena Payton and that, on September 28, 1979, she reported to RPD (i) when she heard screaming she got out of her bed, opened the door to her room, and stepped into the hallway; (ii) she saw a black male come out of the bathroom into the hallway and walked directly toward her; (iii) he "passed within a few feet" of her in the hallway; (iv) turned left and walked toward the elevator; and (v) he "had a medium to short Afro and a fairly clean face. I did not notice any hair on it. If he had a beard or mustache, it was very, very light." Except as expressly admitted, the allegations contained in Paragraph 209 are denied.

210. The Answering Defendant admits that the criminal investigatory file contains at least a portion of Plaintiff's arrest record from on or around August 24, 1979 from the Bureau of Police in Binghamton, NY, and that this document speaks for itself. Except as expressly admitted, the allegations contained in Paragraph 210 are denied.

211. The allegations contained in Paragraph 211 are denied.

212. The allegations contained in Paragraph 212 are denied.

213. The allegations contained in Paragraph 213 are denied.

214. The allegations contained in Paragraph 214 are denied.

215. The Answering Defendant admits, upon information and belief, that Jackie Kelly appeared before the Innocence Commission in its proceeding pertaining to Plaintiff, provided testimony thereto, and that the testimony was transcribed by a court reporter. The Answering Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 215 and therefore denies said allegations.

216.    The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 216 and therefore denies said allegations.

217.    The allegations contained in Paragraph 217 are denied as stated.

218.    The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 218 and therefore denies said allegations.

219.    The allegations contained in Paragraph 219 are denied as stated.

220.    The allegations contained in Paragraph 220 are denied.

221.    The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 221 and therefore denies said allegations.

222.    The allegations contained in Paragraph 222 are denied.

223.    The allegations contained in Paragraph 223 are denied.

224.    The allegations contained in Paragraph 224 are denied.

225.    The allegations contained in Paragraph 225 are denied.

226.    The allegations contained in Paragraph 226 are denied.

227.    The allegations contained in Paragraph 227 are denied.

228.    The allegations contained in Paragraph 228 are, upon information and belief, admitted.

229.    The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 229 and therefore denies said allegations.

230.    The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 230 and therefore denies said allegations.

231.    The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 231 and therefore denies said allegations.

232. The Answering Defendant admits, upon information and belief, that Plaintiff pled guilty to second degree murder. The Answering Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 232 and therefore denies said allegations.

233. The Answering Defendant admits, upon information and belief, that Plaintiff pled guilty to second degree murder. The Answering Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 233 and therefore denies said allegations.

234. The allegations contained in Paragraph 234 are denied.

235. Thea allegations contained in Paragraph 235 are denied.

236. The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 236 and therefore denies said allegations.

237. The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 237 and therefore denies said allegations.

238. The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 238 and therefore denies said allegations.

239. The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 239 and therefore denies said allegations.

240. The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 240 and therefore denies said allegations.

241. The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 241 and therefore denies said allegations.

242. The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 242 and therefore denies said allegations.

243. The Answering Defendant denies the allegations that he at any point "focused exclusively on Blackmon" in his investigation. The Answering Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 243 and therefore denies said allegations.

244. The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 244 and therefore denies said allegations.

245. The Answering Defendant denies the allegation that Plaintiff's confession was "fabricated." The Answering Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 245 and therefore denies said allegations.

246. The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 246 and therefore denies said allegations.

247. The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 247 and therefore denies said allegations.

248. The Answering Defendant admits, upon information and belief, that Jackie Kelly appeared before the Innocence Commission in its proceeding pertaining to Plaintiff, provided testimony thereto, and that the testimony was transcribed by a court reporter. The Answering Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 248 and therefore denies said allegations.

249. The allegations contained in Paragraph 249 are denied.

250.   The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 250 and therefore denies said allegations.

251.   The allegations contained in Paragraph 251 are denied.

252.   The allegations contained in Paragraph 252 are denied.

## COUNT I
## 42 U.S.C. § 1983

**DEPRIVATION OF LIBERTY AND DENIAL OF FAIR CRIMINAL PROCEEDINGS IN VIOLATION OF DUE PROCESS CLAUSE OF THE 14TH AMENDMENT**

253.-264.   In its order dated July 8, 2021, the Court has dismissed the count under which these allegations are made and, accordingly, the allegations contained in Paragraphs 253-264 are denied.

## COUNT II
## 42 U.S.C. § 1983

**DEPRIVATION OF LIBERTY AND SUBSTANTIVE DUE PROCESS IN VIOLATION OF THE 14TH AMENDMENT**

265.-289.   In its order dated July 8, 2021, the Court has dismissed the count under which these allegations are made and, accordingly, the allegations contained in Paragraphs 265-289 are denied.

## COUNT III
## 42 U.S.C. § 1983

**MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF THE 4TH AND 14TH AMENDMENTS**

290.-300.   In its order dated July 8, 2021, the Court has dismissed the count under which these allegations are made and, accordingly, the allegations contained in Paragraphs 290-300 are denied.

## COUNT IV
## 42 U.S.C. § 1983

## MONELL CLAIM FOR UNCONSTITUTIONAL FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE

301.-318.  The allegations made in Paragraphs 301-318 are made under a count which is not brought against the Answering Defendant, and thus said allegations are not directed at the Answering Defendant and require a response. To the extent a response is required, the allegations contained in Paragraphs 301-318 are denied.

## STATE COMMON LAW CLAIMS

## COUNT V
## CIVIL OBSTRUCTION OF JUSTICE AND CIVIL CONSPIRACY

319.-328.  The allegations made in Paragraphs 301-318 are made under a count for which the parties have stipulated to its dismissal. (D.E. 34.)  To the extent a response is required, the allegations contained in Paragraphs 319-328 are denied.

## COUNT VI
## NEGLIGENCE

329.  Paragraph 329 does not make any factual allegations to which a separate response is required. To the extent a response is required, the Answering Defendant incorporates its responses to each paragraph of the Complaint as is if fully restated herein and further alleges:

330.  The allegations contained in Paragraph 330 appear to not be directed at the Answering Defendant and thus no separate response is required. To the extent a response is required, the Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 330 and therefore denies said allegations.

331.  The allegations contained in Paragraph 331 are denied.

332.    The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 332 and therefore denies said allegations.

333.    The Answering Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 333 and therefore denies said allegations.

334.    The Answering Defendant admits that, in the course of his participation in the investigation of the murder of Helena Payton, he was acting in the scope of his employment with the City of Raleigh.  Except as expressly admitted, the allegations contained in Paragraph 334 are denied.

335.    The Answering Defendant denies that any of his actions would result in the application of liability to either himself or the City of Raleigh, and therefore he denies the allegations contained in Paragraph 335.

336.    The allegations contained in Paragraph 336 are denied.

**STATE CONSTITUTIONAL CLAIMS**

**COUNTS VII-VIII**
**DUE PROCESS VIOLATION UNDER ARTICLE I, SECTIONS 19 AND 20 OF THE NORTH CAROLINA CONSTITUTION AND CIVIL CONSPIRACY**

337.-342.    In its order dated July 8, 2021, the Court has dismissed the count under which these allegations are made and, accordingly, the allegations contained in Paragraphs 337-342 are denied.

**PUNITIVE DAMAGES**

343.    Paragraph 343 does not make any factual allegations to which a separate response is required.  To the extent a response is required, the Answering Defendant incorporates its responses to each paragraph of the Complaint as is if fully restated herein and further alleges:

344. The allegations contained in Paragraph 344 are denied.

345. The allegations contained in Paragraph 345 are denied.

IN ADDITION TO THE FOREGOING, ALL HEADINGS CONTAINED IN PLAINTIFF'S COMPLAINT ARE DENIED, AS ARE ANY REMAINING ALLEGATIONS IN THE COMPLAINT.

## SECOND DEFENSE
### (Failure to State a Claim)

The Answering Defendant renews and preserves its defense under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as the Complaint fails to state a claim upon which relief can be granted.

## THIRD DEFENSE
### (Objectively Reasonable)

At all times relevant to Plaintiff's Complaint, the conduct of the Answering Defendant was objectively reasonable and did not violate any clearly established constitutional rights of Plaintiff. Conduct which is objectively reasonable cannot be negligent, nor can conduct which did not violate clearly established constitutional rights. Accordingly, the Answering Defendant did not breach any legal duty owed to the Plaintiff.

## FOURTH DEFENSE
### (Public Official Immunity)

At all times relevant to this action, the Answering Defendant was a sworn public officer, acting in his official capacity, and is entitled to public officer or public official immunity, which is pleaded in bar of Plaintiff's claims.

## FIFTH DEFENSE
### (Public Duty Doctrine)

Plaintiff's Complaint is barred by the public duty doctrine, particularly since any injury to Plaintiff did not occur as a direct result of any alleged negligence on the part of the City or its officers, and due to the discretionary nature of the acts at issue of the Answering Defendant.

## SIXTH DEFENSE
### (Probable Cause)

The arrest, indictment, prosecution and imprisonment of Plaintiff were supported by probable cause.

## SEVENTH DEFENSE
### (Lack of Proximate Cause)

Any alleged misconduct on the part of the Answering Defendant, which has been and is again denied, did <u>not</u> proximately cause the incarceration of, and any damages to, Plaintiff.

## EIGHTH DEFENSE
### (Legal Justification)

Legal justification is pled as an affirmative defense in bar of Plaintiff's right to recover in this action.

## NINTH DEFENSE
### (Compliance)

The Answering Defendant should incur no liability in this action because at the time of the acts alleged in the Complaint, he acted in good faith, in conformance with RPD policies and procedures, without any wrongful intent, and with a reasonable belief that his conduct was in conformance with North Carolina state and federal laws, as well as consistent with the U.S. Constitution. The sole remaining claim against the Answering Defendant in his individual capacity should be dismissed.

## TENTH DEFENSE
### (No Grounds for Punitive Damages)

The allegations contained in Plaintiff's Complaint fail to establish by clear and convincing evidence that the Answering Defendant acted with malice or undertook willful or wanton conduct with regard to the matters at issue in this action, and the Answering Defendant asserts the Plaintiff's failure to allege or prove the factual elements necessary to recover punitive damages as required by N.C. Gen. Stat. §1D-15 in bar of Plaintiff's claim for punitive damages against the Answering Defendant in this action. Further, Plaintiff knows or should know that the claim for punitive damages against the Answering Defendant is frivolous or malicious. Therefore, in accordance with N.C. Gen. Stat. § 1D-45, the court should award attorneys' fees to the Answering Defendant. Finally, the Answering Defendant specifically pleads that the imposition of punitive damages in this matter against him would be unconstitutional.

## ELEVENTH DEFENSE
### (Limitations)

Plaintiff's claims for damages are barred, reduced, and/or limited pursuant to applicable statutory provisions and common law doctrines regarding limitations on awards, caps on damages, laches and setoffs.

## TWELFTH DEFENSE
### (Statutes of Limitations and Repose)

Plaintiff's remaining claim may be barred by the statutes of limitations and repose.

## THIRTEENTH DEFENSE
### (Contributory Negligence)

If it is determined that the Answering Defendant was negligent as alleged in Plaintiff's Complaint, which negligence is again specifically denied, then the Answering Defendant alleges that Plaintiff was contributorily negligent in that his own negligence was the direct and proximate cause of his injuries and damages, if any. Plaintiff was contributorily negligent by confessing to

a crime he did not commit. Accordingly, the Answering Defendant affirmatively pleads Plaintiff's contributory negligence as a bar to the negligence claim against him in Plaintiff's Complaint.

## FOURTEENTH DEFENSE
### (Notice of Additional Defenses)

The Answering Defendant reserves the right to plead additional affirmative defense as may be revealed during disclosure and/or discovery proceedings in this matter and likewise plead all defenses pled by all co-defendants in this action.

**WHEREFORE**, having fully answered the Complaint (Doc. 1) of the Plaintiff, the Answering Defendant respectfully requests the following:

1.  That the Court dismiss this action as to the Answering Defendant;

2.  That the Plaintiff have and recover nothing from the Answering Defendant;

3.  That the Court award the Answering Defendant its reasonable attorneys' fees and costs for the defense of this action; and

4.  Any other such relief in favor of the Answering Defendant as the Court may deem just and proper.

Respectfully submitted, this the 22nd day of July, 2021.

/s/ Jason R. Benton
Jason R. Benton
N.C. State Bar No. 27710
Daniel E. Peterson
N.C. State Bar No. 41251
**PARKER POE ADAMS & BERNSTEIN LLP**
Bank of America Tower
620 S. Tryon St., Suite 800
Charlotte, NC 28202
Telephone: (704) 372.9000
Facsimile: (704) 334.4706
Email: jasonbenton@parkerpoe.com
danielpeterson@parkerpoe.com

*Attorneys for Defendant James Holder*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on this date, the foregoing **Defendant James Holder's Answer to Complaint (Doc. 1)** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification and serve same upon counsel of record via the Court's electronic case filing system.

Sonya Pfeiffer
David S. Rudolf
RUDOLF WIDENHOUSE
225 E. Worthington Avenue, Suite 100
Charlotte, NC  28203
Email:  spfeiffer@rudolfwidenhouse.com
Email:  dsrudolf@rudolfwidenhouse.com

*Counsel for Plaintiff*

Rachel E. Keen
Sonny S. Haynes
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC  27101
Email:  rachel.keen@wbd-us.com
Email:  sonny.haynes@wbd-us.com

*Counsel for Defendant Andrew Munday*

Dorothy V. Kibler
CITY OF RALEIGH ATTORNEY'S OFFICE
P.O. Box 590
Raleigh, NC  27602
Email:  dorothy.kibler@raleighnc.gov

Norwood P. Blanchard, III
CROSSLEY MCINTOSH COLLIER HANLEY & EDES, PLLC
5002 Randall Parkway
Wilmington, NC  28403
Email:  norwood@cmclawfirm.com

*Counsel for Defendant City of Raleigh*

This the 22nd day of July, 2021.

/s/ Jason R. Benton
Jason R. Benton
N.C. State Bar No. 27710
Daniel E. Peterson
N.C. State Bar No. 41251
**PARKER POE ADAMS & BERNSTEIN LLP**
Bank of America Tower
620 S. Tryon St., Suite 800
Charlotte, NC 28202
Telephone: (704) 372.9000
Facsimile:  (704) 334.4706
Email: jasonbenton@parkerpoe.com
         danielpeterson@parkerpoe.com

*Attorneys for Defendant James Holder*