IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:20-CV-00524-FL

| | |
|---|---|
| **JAMES BLACKMON, by and through his GUARDIAN OF THE ESTATE, PAUL TRUETT CANADY, II,**<br><br>**Plaintiff,**<br><br>v.<br><br>**JAMES HOLDER, in his individual capacity, ANDREW MUNDAY, in his individual capacity, and THE CITY OF RALEIGH,**<br><br>**Defendants.** | **DEFENDANT JAMES HOLDER'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S "MOTION TO MODIFY ORDER OR FOR LEAVE TO FILE THE ATTACHED AMENDED COMPLAINT" (D.E. 47)** |

Pursuant to E.D.N.C. Local Civil Rules 7.1(e) and 7.2(a), Defendant James Holder, in his individual capacity (hereinafter, "Holder"), by and through counsel, submits this Memorandum of Law in opposition to Plaintiff's "Motion to Modify Order or for Leave to File the Attached Amended Complaint" (D.E. 47).[1]  The Court should deny Plaintiff's motions because (i) the Motion to Modify Order does not reveal a "clear error of law" in the Court's Order (D.E. 38); and (ii) Plaintiff's Proposed Amended Complaint is futile because Holder would still be entitled to qualified immunity on the federal constitutional claims against him even if the new allegations are considered.

## ARGUMENT

After dismissing his individual-capacity federal constitutional claims, the Court allowed Plaintiff the opportunity to seek leave to amend his Complaint, ostensibly, to attempt to state § 1983 claims sufficient to withstand the operative qualified immunity analysis. (D.E. 38, p. 19.)

---

[1] Defendants Andrew Munday and The City of Raleigh join and concur in this opposition.

Instead of deferring to the Court's ruling, Plaintiff accuses the Court of a "clear error of law" (D.E. 45, p. 2), doubling-down on his original theory of liability by filing a reply brief to the Court's Order in the form of a Motion to Modify under Rule 59(e), but then also proposing an amended complaint that still does not withstand the application of qualified immunity. For the reasons set forth below, the Court should deny both motions.

I. **THE COURT DID NOT COMMIT ANY CLEAR ERROR OF LAW BECAUSE IT FOLLOWED THE ONLY LEGAL AUTHORITY PRESENTED TO IT WHICH COULD POSSIBLY SUPPORT PLAINTIFF'S RE-CAST "FABRICATED FALSE CONFESSION" CLAIM.**

Plaintiff takes exception to the Court's accurate recitation of the Complaint's allegations that (i) "plaintiff's complaint does not allege that defendants Munday and Holder knew plaintiff was innocent"; and (ii) that "even assuming the complaint alleges defendants Holder and Munday 'reasonably should have known' plaintiff was innocent, such allegation describes a negligent mental state." (D.E. 38, p. 17.) (Emphasis in original.) Notwithstanding Plaintiff's vigorous insistence, Plaintiff's newest iteration of his argument on this already-decided issue does not offer the Court any reason to reverse itself.

It was not a constitutional violation in 1983 for a law enforcement officer to knowingly ask suggestive or leading questions to a suspect with a mental health history and/or a mental disability. This is incontrovertible, and Plaintiff essentially acknowledges as much, as he has not cited to any controlling legal authority to the contrary. Plaintiff cannot direct this Court to any United States Supreme Court, Fourth Circuit or North Carolina Supreme Court jurisprudence recognizing his claim that Holder and Munday violated any clearly established constitutional rights in 1983 by *coercing* Plaintiff, through use of his own psychiatric/mental health history and suggestive/leading questions, into confessing to the 1979 murder of Helena Payton.

Confronted with this dilemma, in his brief in opposition to Holder's Motion to Dismiss (D.E. 33), Plaintiff costumed his coercion claim as one in which Holder and Munday fabricated evidence- i.e., his confession. However, and again, Plaintiff cannot direct this Court to any United States Supreme Court, Fourth Circuit or North Carolina Supreme Court jurisprudence recognizing a "fabricated false confession" claim in which the criminal suspect, himself, fabricates his own false confession. He cannot even cite to a district court decision in North Carolina supporting such a claim.

Instead, Plaintiff cites to *Howard v. City of Durham*, 487 F.Supp.3d 377 (M.D.N.C. 2020), which involves claims that law enforcement officers fabricated (1) witness statements, (2) a report to a prosecutor, and (3) <u>a written report</u> of a suspect's purported confession to the crime. Accordingly, the *Howard* case does not support Plaintiff's attempt to concoct a "fabricated false confession" claim in his briefing to this Court.

All of the parties' briefing to this Court thus far, spanning across Defendants' motions to dismiss and Plaintiff's pending motions, yields only one case that comes close to recognizing the type of "fabricated false confession" claim Plaintiff now espouses. That case was (1) from the Western District of Virginia and (2) cited in Holder's Reply Brief in support of his Motion to Dismiss (D.E. 35). *See Washington v. Buraker*, 322 F.Supp.2d 692 (W.D. Va. 2004) (*Washington I*).

However, *Washington I*—Plaintiff's re-cast claim's only possible tether to legitimacy—requires him to allege and prove that Holder and Munday caused Plaintiff to fabricate his own confession despite having <u>actual</u> knowledge of his innocence at the time of the interview. 322 F.Supp.2d at 698. Complicating things further for Plaintiff, that very same district court, in *Washington II*, unequivocally concluded that an objectively reasonable police officer in 1983

would not have concluded that asking leading questions to a mentally disabled suspect was unconstitutional. 322 F.Supp.2d 702, 715 (W.D. Va. 2004) (*Washington II*).

Plaintiff cannot plead that Holder and Munday had *actual* knowledge of his innocence, and so he did not plead this in his Complaint. Instead, Plaintiff affirmatively pled the exact opposite- that is, that Holder and Munday *believed he was guilty* of the crime. Plaintiff contended that, because Holder and Munday "suffered from a classic case of confirmation bias and tunnel vision," "[t]hey believed Blackmon had committed the murder, [and this] caused them to ignore substantial evidence of his innocence and to create a fabricated confession." (D.E. 1, ¶ 154.) However, weighing exculpatory evidence against inculpatory evidence is not tantamount to a fabrication of the inculpatory evidence, much less an indication that Holder and Munday had actual knowledge of Plaintiff's innocence. Simply put, this is not a case of fabricated evidence.

As such, the Court did not commit "a clear error of law" when it dismissed Plaintiff's §1983 claims against Holder and Munday on the basis of qualified immunity. In fact, giving Plaintiff the benefit of the doubt on his newly concocted "fabricated false confession" claim, the Court followed the only legal authority put before it that could possibly support this claim. Accordingly, Plaintiff's Motion to Modify Order should be denied.

II. **PLAINTIFF'S PROPOSED AMENDED COMPLAINT IS INSUFFICIENT AS A MATTER OF LAW BECAUSE IT FAILS TO PLAUSIBLY ALLEGE AN ESSENTIAL ELEMENT OF HIS RE-CAST "FABRICATED FALSE CONFESSION" CLAIM.**

After purporting to inform the Court of its clear error, Plaintiff alternatively requests that he be allowed to file an amended complaint. However, the Proposed Amended Complaint (D.E. 47-1) ("PAC") does nothing more than recast the rejected theory of § 1983 liability contained in the original Complaint. Accordingly, the Court should deny Plaintiff's Motion to Amend on futility grounds.

While leave to amend under Fed. R. Civ. P. 15(a) is generally given freely, "a district court has discretion to deny a motion to amend a complaint so long as it does not outright refuse to grant the leave without any justifying reason." *Equal Rights Ctr. v. Niles Bolton Assoc.*, 602 F.3d 597, 603 (4th Cir. 2010). "A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Id.*

Amendments to a complaint are futile when "the proposed amendments could not withstand a motion to dismiss." *Perkins v. United States,* 55 F.3d 910, 917 (4th Cir. 1995). Determining whether a complaint states a plausible claim for relief will… be a context-specific task that requires the court to draw on its judicial experience and common sense." *Iqbal v. Ashcroft*, 556 U.S. 662, 679. Plaintiff's PAC is futile because it adds only conclusory allegations in an unsuccessful effort to plead around the Court's Order (D.E. 38) related to qualified immunity.

Differences between the Complaint and PAC are sparse, ineffectual, and conclusory. The first change appears at Paragraphs 153 through 155. Plaintiff moves Paragraph 154 of the original Complaint to Paragraph 153 of the PAC and edits it slightly but inconsequentially. Plaintiff now proposes to allege that Holder and Munday's "confirmation bias and tunnel vision" caused them to "unreasonably" believe that "Blackmon had committed the murder" (note that Plaintiff adds a conclusory "unreasonably" between the two iterations of this allegation). (D.E. 47-1, ¶ 153.)

According to the original Complaint, it was the detectives' belief that "Blackmon had committed the murder which caused them to ignore substantial evidence of his innocence and to create a fabricated confession." (D.E. 1, ¶ 154.) In the PAC, this now "unreasonable belief" was their "motivation to create a fabricated confession, since they lacked any independent objective evidence of Blackmon's guilt…" (D.E. 47-1, ¶ 153.) Plaintiff then inserts Paragraph 153 from

the original Complaint into Paragraph 154 of the PAC, wherein it is alleged that "Holder and Munday ignored everything [Plaintiff] said during the interrogation that was inconsistent with their theory that Plaintiff was guilty of murdering Helena Payton…" (D.E. 47-1, ¶ 154.)

Without any further factual basis, Plaintiff then adds the conclusory allegation contained in Paragraph 155 that, "[t]hese statements would have indicated to any reasonable criminal investigator in October 1983, and did indicate to Holder and Munday, that Blackmon was innocent of the Payton murder." (D.E. 47-1, ¶ 155.)

Given these mere cosmetic changes, Plaintiff's Motion to Amend should be denied as futile because the PAC is as subject to dismissal on the basis of qualified immunity as the original Complaint. Not only does Plaintiff still allege, even after the clear roadmap provided by *Washington I* and this Court, that, when they began interviewing him, Holder and Munday believed that Plaintiff had committed the murder of Helena Payton, but <u>Plaintiff also still fails to allege that the detectives had actual knowledge of his innocence</u>. According to *Washington I*, this is fatal to Plaintiff's new "fabricated false confession" claim. 332 F.Supp.2d at 698. Plaintiff's new allegation that certain statements that he made to Holder and Munday that were inconsistent with "their theory of his guilt" <u>indicated</u> his innocence to the detectives falls short of attributing <u>actual knowledge of his innocence</u> to them. Even if, giving Plaintiff the benefit of the doubt, the officers' alleged knowledge of exculpatory statements made by Blackmon, might, in a vacuum, constitute some indicia of innocence, that is not the equivalent of actual knowledge of his innocence. This is particularly true where Plaintiff also alleges in the PAC his own inculpatory statements. (*See e.g.* D.E. 47-1, ¶¶ 178-180, 186, 190, 193, 196, 200, 202, 205, 208).

The only other change between the original Complaint and the PAC is in Paragraph 228 of the PAC, wherein Plaintiff alleges that, because a witness did not identify him in a lineup for a

crime that had occurred over four years earlier, Holder and Munday "knew that the incriminatory statements they had *elicited from Blackmon*…were fabricated and false…" (D.E. 47-1, ¶ 228.) (Emphasis added.) This allegation does not move the needle on the *Washington I* "fabricated false confession" claim because it describes an event that occurred after the subject interview of Plaintiff. *Cf., Washington I*, 322 F.Supp.2d at 698 ("…Plaintiff is directed to conduct discovery on the limited issue of whether officers… *had actual knowledge of Washington's innocence **at the time of Washington's interrogation**.*") (Emphasis added).

Without the lynchpin allegation of actual knowledge of innocence at the time of the interview, no matter how he attempts to dress up his claims, Plaintiff is left with a coerced confession claim. It is uncontroverted that such a claim fails as originally argued in Holder's initial brief supporting his Motion to Dismiss (D.E. 31). Accordingly, Plaintiff's Motion to Amend, insofar as it attempts to resuscitate his federal constitutional claims against Holder and Munday, should be denied on the basis of futility.

Respectfully submitted, this the 18th day of August, 2021.

/s/ Jason R. Benton
Jason R. Benton
N.C. State Bar No. 27710
Daniel E. Peterson
N.C. State Bar No. 41251
**PARKER POE ADAMS & BERNSTEIN LLP**
Bank of America Tower
620 S. Tryon St., Suite 800
Charlotte, NC 28202
Telephone: (704) 372.9000
Facsimile: (704) 334.4706
Email: jasonbenton@parkerpoe.com
danielpeterson@parkerpoe.com

*Attorneys for Defendant James Holder*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date, the foregoing **Defendant James Holder's Memorandum of Law in Opposition to Plaintiff's "Motion to Modify Order or for Leave to File the Attached Amended Complaint"** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification and serve same upon counsel of record via the Court's electronic case filing system.

This the 18th day of August, 2021.

/s/ Jason R. Benton
Jason R. Benton
N.C. State Bar No. 27710
Daniel E. Peterson
N.C. State Bar No. 41251
**PARKER POE ADAMS & BERNSTEIN LLP**
Bank of America Tower
620 S. Tryon St., Suite 800
Charlotte, NC 28202
Telephone: (704) 372.9000
Facsimile: (704) 334.4706
Email: jasonbenton@parkerpoe.com
       danielpeterson@parkerpoe.com

*Attorneys for Defendant James Holder*