IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-524-FL

| | |
|---|---|
| JAMES BLACKMON, a/k/a Jimmy Andrew Underwood, by and through his Guardian of Estate Paul Truett Canady, II, <br><br> Plaintiff, <br><br> v. <br><br> JAMES HOLDER, in his individual capacity; ANDREW MUNDAY, in his individual capacity; and CITY OF RALEIGH, <br><br> Defendants. | ORDER |

This matter is before the court on plaintiff's motion to modify that part of the court's order entered July 8, 2021, dismissing counts one through three of plaintiff's complaint based on qualified immunity. (DE 47). In the alternative, plaintiff seeks leave to amend his complaint. (Id.). The issues raised have been fully briefed, and in this posture are ripe for ruling. For the following reasons, plaintiff's motion is denied.

**STATEMENT OF THE CASE**

Plaintiff commenced this action October 5, 2020, asserting that individual defendants, who are former detectives of the Raleigh Police Department, deprived plaintiff of due process in connection with plaintiff's 1988 conviction for second degree murder. Plaintiff asserts claims under 42 U.S.C. § 1983 for violation of his Fourth and Fourteenth Amendment rights, as well as

state law claims for civil conspiracy, negligence, and state constitutional violations. Plaintiff seeks compensatory and punitive damages, costs, fees, and interest.

On July 8, 2021, upon defendants' motions to dismiss, this court dismissed without prejudice plaintiff's § 1983 claims against defendants James Holder ("Holder") and Andrew Munday ("Munday") in their individual capacities, as well as plaintiff's claims for state constitutional violations.[1] See Blackmon v. Holder, No. 5:20-CV-524-FL, 2021 WL 2877902, at *10 (E.D.N.C. July 8, 2021). The court allowed plaintiff's remaining claims to proceed. Id.

Shortly thereafter, plaintiff filed the instant motion to modify the court's July 8, 2021, order pursuant to Federal Rule of Civil Procedure 59(e). In particular, plaintiff seeks reconsideration of that part of the court's order dismissing plaintiff's § 1983 claims against defendants Holder and Munday in their individual capacities. In the alternative, plaintiff seeks leave to amend his complaint with respect to those claims, in addition to deleting the state constitutional violations dismissed. Defendant Holder responded in opposition to the motion, and defendants Munday and City of Raleigh ("City") joined in that response. Plaintiff replied in support of his motion.

In the interim, defendants filed answers to plaintiff's complaint, and the court entered a case management order on November 4, 2021, setting a December 15, 2022, deadline for discovery and a January 15, 2023, deadline for dispositive motions.

**STATEMENT OF THE FACTS**

The facts alleged in plaintiff's complaint may be briefly summarized as follows.[2] On September 29, 1979, Helena Payton ("Payton") was attacked in the bathroom of her dormitory and died from her injuries shortly thereafter. (Compl. (DE 1) ¶ 10). Defendants Holder and Munday

---

[1] Plaintiff also voluntarily dismissed his state law claim for civil conspiracy without prejudice.
[2] The court incorporates herein by reference the summary of facts alleged, as set forth more particularly in the court's July 8, 2021, to which reference is made. Blackmon, 2021 WL 2877902, at *1-2.

allegedly focused their investigation of that murder exclusively on plaintiff and ultimately "decided to exploit [plaintiff's] mental illness as part of their interrogation strategy." (Id. ¶¶ 27, 147, 152-53, 155, 226). Through such tactics, defendants Holder and Munday allegedly caused plaintiff to "fabricate false inculpatory statements despite his actual innocence." (Id. ¶¶ 200-207, 266). Plaintiff was arrested for Payton's murder December 7, 1983, and he pleaded guilty four years later. (Id. ¶¶ 227, 256).

Additional allegations relevant to the instant motion also will be discussed below.

## COURT'S DISCUSSION

A. Motion to Modify Order

1. Standard of Review

Pursuant to Federal Rule of Civil Procedure 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."[3] Fed. R. Civ. P. 54(b).[4] Compared to post-judgment Rule 59(e) motions, Rule 54(b) gives district courts "broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." Carlson v. Boston Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017). The discretion provided by Rule 54(b), however, "is not limitless." Id. The court may revise an interlocutory order only in the following circumstances: (1) a subsequent trial produces substantially different evidence; (2) a change in applicable law; or (3) clear error causing

---

[3] Though plaintiff cites to Federal Rule of Civil Procedure 59(e) in his motion, as the order he challenges "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties," Rule 54(b) provides the correct standard. Fed. R. Civ. P. 54(b).
[4] Internal citations and quotation marks are omitted from all citations unless otherwise specified.

3

manifest injustice.  Id.; see also Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003).

    2.  Analysis

As noted above, plaintiff seeks reconsideration of that part of the court's July 8, 2021, order dismissing plaintiff's § 1983 claims against defendants Munday and Holder alleging they fabricated plaintiff's inculpatory statements that were subsequently used to prosecute him in violation of the Fourth and Fourteenth Amendment.  In that order, the court held that plaintiff's claims failed as a matter of law where plaintiff's allegations described, at most, negligent conduct, and "[a] plaintiff's allegations of negligence by a police officer will not provide a basis for a constitutional violation."  Blackmon, 2021 WL 2877902, at *9 (quoting Miller v. Prince George's Cty., MD, 475 F.3d 621, 627-28 (4th Cir. 2007)).  Plaintiff now argues that the court's reasoning amounts to a clear error, where plaintiff contends he adequately pleaded that defendants Holder and Munday acted intentionally or at least recklessly.  (See Pl. Motion (DE 47) at 6; Pl. Mem. (DE 46) at 3).  Plaintiff's argument is unavailing based upon the present allegations in the complaint.

As this court previously noted, plaintiff alleges in his complaint that defendants Munday and Holder "believed [plaintiff] had committed the murder, which caused them to ignore substantial evidence of his innocence and to create a fabricated confession." (Compl. (DE 1) ¶ 154 (emphasis added)).  This allegation contradicts his conclusory assertions elsewhere that defendants acted intentionally to fabricate plaintiff's confession. (See, e.g., id. ¶¶ 255-257).  Thus, plaintiff has not pleaded facts giving rise to a plausible inference that defendants acted intentionally.

With respect to reckless conduct, plaintiff must allege an injury that "follow[ed] from something more than negligence, but less than intentional conduct."  County of Sacramento v.

4

Lewis, 523 U.S. 833, 849 (1998); see Daniels v. Williams, 474 U.S. 327, 334-36 (1986) (holding the protections of the Due Process Clauses are not triggered by negligence); Washington v. Wilmore, 407 F.3d 274, 285 n.2 (4th Cir. 2005) (providing that the issue in the case was whether any failure of the justice system was the "result of deliberate or reckless misconduct by law enforcement" (emphasis added)) (hereinafter "Washington").

In the context of malicious prosecution claims, recklessness is measured by "the demonstration of willingness to affirmatively distort truth." Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000); see also White v. Wright, 150 F. App'x 193, 199 (4th Cir. 2005) (citing to Myers v. Morris, 810 F.2d 1437, 1458 (8th Cir. 1987) in requiring a "specific affirmative showing of dishonesty"). Thus, recklessness can be established by showing "an officer acted 'with a high degree of awareness of [a statement's] probable falsity,' that is, 'when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" Miller, 475 F.3d at 627 (quoting Wilson, 212 F.3d at 788) (emphasis added); Massey v. Ojaniit, 759 F.3d 343, 354 (4th Cir. 2014); see also Howard v. City of Durham, 487 F. Supp. 3d 377, 404-05, 408 (M.D.N.C. 2020) (looking to cases deciding malicious prosecution claims in defining recklessness as applied fabrication claims).

For instance, in Washington, the plaintiff alleged the defendant officer falsely represented that the plaintiff independently volunteered knowledge of nonpublic information about a murder for which plaintiff was ultimately convicted. 407 F.3d at 282. In so doing, defendant officer implicated plaintiff in the murder by representing that "he had knowledge of evidence relating to the crime which it c[ould] be argued only the perpetrator would have known." Id. at 277. Plaintiff asserted that he did not volunteer that information and it originated from the police. Id. at 278-79.

5

On those facts, the court found the plaintiff adequately alleged the violation of his constitutional right not to be deprived of liberty as a result of the fabrication of evidence by an investigating officer. Id. at 283-84.

By comparison, in the district court order subject of appeal in Washington, the district court separately held that there was insufficient evidence of a constitutional violation by another defendant officer also involved in the interrogation that led to his purported confession. As to that other officer, the court held the plaintiff's claim had a "weaker evidentiary basis" as "[e]ven assuming that [he] asked [plaintiff] leading questions," as the plaintiff alleged, "the record support[ed] the conclusion that [plaintiff] answered those questions and confessed to the [] murder." Washington v. Buraker, 322 F. Supp. 2d 702, 712 (W.D. Va. 2004) (hereinafter "Buraker"). "The confession itself was not a fabrication." Id. As the plaintiff failed to point to any evidence indicating that this other defendant officer misrepresented the confession, including the origination of nonpublic information, the court dismissed the fabrication claim as to him. Id.; see also Howard, 487 F. Supp. at 404-05, 408 (stating that "[t]he false evidence must have been fabricated deliberately or with reckless disregard for the truth," and holding that where there was "only an allegation of fabrication," the plaintiff had to show that the defendant officer "intentionally or recklessly falsified" the challenged statements).

Here, plaintiff's allegations are comparable to the claim dismissed in Buraker and in contrast to the claim allowed to proceed in Washington. Namely, plaintiff alleges that defendants Holder and Munday fabricated plaintiff's confession itself with leading questions and by "feeding [plaintiff] facts about the attack on [the murder victim] . . . [and] exploiting [his] mental illness." (Compl. (DE 1) ¶ 255). Importantly, as in Buraker and unlike in Washington, plaintiff does not assert that defendants mischaracterized or misrepresented plaintiff's incriminating statements.

6

Rather, plaintiff contends defendants first ignored "substantial evidence of [plaintiff's] innocence," which in turn prompted them to fabricate plaintiff's confession with allegedly manipulative tactics. (Id. ¶¶ 154, 267).

In this context, crediting inculpatory over exculpatory evidence does not amount to a "willingness to affirmatively distort truth." Wilson, 212 F. 3d at 788. In plaintiff's motion, he invites the court to draw an inference from allegedly exculpatory evidence at the time that defendants should have doubted the veracity of plaintiff's confession, and that they were reckless in not doing so. (See, e.g., Compl. (DE 1) ¶ 273). In particular, plaintiff points to the following exculpatory evidence outlined in his complaint: plaintiff's medical records indicated that he suffered from severe mental illness, plaintiff's fingerprints did not match those found at the crime scene, arrest records provide plaintiff was in New York one month before and five weeks after the attack, there was no evidence that plaintiff was in fact present in North Carolina at the time of the attack, no physical evidence tied him to the crime, an eyewitness failed to affirmatively identify him as the assailant in a photo array and a live lineup, and eyewitnesses provided the assailant was clean-shaven while plaintiff had facial hair. (Compl. (DE 1) ¶ 267).

Taking those allegations to be true, plaintiff's complaint nevertheless also includes evidence suggesting his guilt. For instance, plaintiff alleges that defendants, through a detective with the Raleigh Police Department, received a tip from an anonymous source that a black male patient at Dorothea Dix Hospital "with a close cropped afro and a close cropped mustache and beard" had bragged about killing a woman at St. Augustine with a knife. (Id. ¶ 97). That source remembered the patient as having a last name beginning with a "B," and a second source suggested that plaintiff was the only patient there who fit the description. (Id. ¶ 100, 101). Moreover, when defendants showed a photo array to an eyewitness, while she did not affirmatively identify plaintiff

7

as the assailant, she did identify him as "possibly be[ing] the suspect." (Id. ¶ 141 (emphasis omitted)). Further, according to plaintiff's complaint, while plaintiff's New York arrest records were available to defendants Holder and Munday, it is "not clear" that they were actually made aware of them. (Id. ¶ 111 n.4). Even if they were, as the arrests did not actually overlap with the time of the assault, the records did not necessarily exclude plaintiff as a suspect. (See id. ¶ 267).

In light of the presence of both alleged inculpatory and exculpatory evidence, it is not plausible to infer that, by pursuing plaintiff's confession and subsequently using it to prosecute him, defendants were acting dishonestly or otherwise attempting to distort the truth. See Massey, 759 F.3d at 355 ("That an eyewitness described an assailant as having braids does not, by operation of nature or law, exonerate all suspects who do not have braids; it merely calls into question that aspect of the description as applied against anyone not wearing braids."). Indeed, plaintiff provides in his complaint that defendants "believed [plaintiff] committed the murder." (Compl. (DE 1) ¶ 154).

As to defendants' alleged manipulative tactics, as in Buraker, "[e]ven assuming that [they] asked [plaintiff] leading questions, the record support[s] the conclusion that [plaintiff] answered those questions and confessed to the [] murder." 322 F. Supp. 2d at 707. Further, crediting plaintiff's allegation that defendants additionally "exploit[ed] [plaintiff's] mental illness as part of their interrogation strategy, in order to get him to confess to the murder," plaintiff still fails to make an affirmative showing of dishonesty by defendants, particularly where he does not claim coercion. (Id. ¶¶ 147, 152-53, 155); see Howard, 487 F. Supp. 3d at 406 (holding that to the extent the challenged witness' testimony was fabricated, where there was no evidence that the defendant officer coerced the witness or promised benefits for providing inculpatory information, it was fabricated by the witness himself); id. at 408 (same as to another witness); see also Halsey v.

8

Pfeiffer, 750 F.3d 273, 295 (3d Cir. 2014) ("[T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong."). Where recklessness is measured by a "willingness to affirmatively distort truth," plaintiff thus fails to support his claim with sufficient factual allegations that defendants Holder and Munday fabricated plaintiff's inculpatory statements with reckless disregard for the truth. Wilson, 212 F. 3d at 788.

Plaintiff's arguments to the contrary are unavailing. In the instant motion, plaintiff relies in large part on a district court case, Howard, in which a plaintiff alleged a defendant officer investigating murders for which plaintiff was convicted fabricated incriminating statements from a myriad of witnesses. 487 F. Supp. 3d at 404-405. Most relevant to the facts pleaded here, the district court found a genuine issue of material fact where the plaintiff alleged the defendant detective "fabricated statements [of a witness] . . . by stopping the taping of her interview and improperly feeding her inculpatory information so that she would give false answers that implicated [plaintiff]." Id. at 411. Notably, the defendant officer admitted to stopping the tape, conceded that he may have done so "to probe [the witness's] inconsistent answers" and "'probably' told her she could be charged with murder or being an accessory to murder," and additionally acknowledged that the witness' statements in the tape "contained details that only someone who was either present or had reviewed the autopsy reports would know, such that if she was not present then [defendant] would have been the likely source of that information." Id. at 412. The court consequently held that there was a genuine issue of material fact as to whether the defendant detective knowingly or recklessly fabricated the tape such that it mischaracterized the entirety of the interrogation. See id. By comparison, there is no similar claim here that defendants distorted or affirmatively mischaracterized plaintiff's confession or any record of it.

9

In sum, the complaint fails to support a claim that defendants Howard and Munday deliberately or recklessly fabricated plaintiff's confession in violation of due process. For the same reason, it also fails to state a claim for malicious prosecution based on the subsequent use of that confession. Accordingly, finding no clear error, plaintiff's motion to modify the court's order dismissing those claims is denied. In so holding, the court recognizes that defendants' conduct can be characterized as a failure in defendants' duty of care as officers. "However, the issue in this litigation is not simply whether the justice system failed [plaintiff], but instead whether any such failure is the result of deliberate or reckless misconduct by law enforcement." Washington, 407 F.3d at 285 n.2. Here, for the reasons provided, plaintiff has not alleged sufficient facts permitting such an inference.

Therefore, that part of plaintiff's motion seeking to modify the court's July 8, 2021, order is DENIED.

B. Motion to Amend

1. Standard of Review

Where, as here, more than 21 days have passed since the filing of an initial complaint or responsive pleading, the plaintiff "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). With respect to futility, the court may deny leave to amend "if the proposed amended complaint fails to

state a claim under the applicable rules and accompanying standards." Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim has been stated, "[the] court accepts all well-pled facts as true and construes those facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement [,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

2. Analysis

Where plaintiff seeks to otherwise amend claims against defendants Munday and Holder that were previously dismissed, the court's instant analysis properly focuses on the material differences between those claims as originally pleaded and the proposed amendments, in order to determine whether the proposed amendments remedy the previously identified pleading deficiencies. In accordance with the foregoing analysis, plaintiff's amendments must support a claim that defendants Howard and Munday acted knowingly or recklessly when they allegedly fabricated plaintiff's confession and subsequently used it to institute criminal proceedings against him.

Plaintiff's proposed amendments largely attempt to address the court's holding that in pleading defendants "believed Blackmon had committed the murder," plaintiff directly contradicted his contentions elsewhere that defendants acted knowingly to fabricate plaintiff's

confession. Blackmon, 2021 WL 2877902, at *9 (quoting Compl. (DE 1) ¶ 154)). Plaintiff seeks to amend the quoted paragraph, providing instead that defendants "<u>unreasonably</u> believed Blackmon had committed the murder" and that unreasonable belief "served as their motivation to create a fabricated confession." (Prop. Am. Compl. Redline (DE 46-1) ¶ 153 (emphasis added)). Plaintiff also seeks to add a subsequent paragraph providing that plaintiff's statements during his interrogation "would have indicated to any reasonable criminal investigator in October 1983, and did indicate to Holder and Munday, that Blackmon was innocent of the Payton murder." (Id. ¶ 155). Plaintiff further seeks to add the allegations that "[b]y October 31, 1983, Holder and Munday knew that the incriminatory statements they had elicited from Blackmon . . . were fabricated and false." (Id. ¶ 228). While there was therefore "no probable cause to charge Blackmon with the murder of Helena Payton[,] [d]efendants Holder and Munday intentionally and deliberately ignored these facts and arrested Blackmon for that murder." (Id.). Finally, plaintiff seeks to add that defendants acted "willfully and intentionally" to deprive plaintiff of due process of law "by intentionally and/or recklessly engaging in conduct which, taken individually and collectively, violated the due process clause." (Id. ¶ 256).

The court does not consider plaintiff's assertions that defendants acted knowingly or recklessly without "further factual enhancement." Nemet Chevrolet, Ltd., 591 F.3d at 255. As to plaintiff's factual amendments, they fail to support a claim for fabrication by defendants for the same reason the original pleadings did. Plaintiff again seeks to draw an inference of recklessness, on the ground that defendants should have doubted the veracity of plaintiff's incriminatory statements, based upon alleged exculpatory evidence. As determined previously, crediting inculpatory over exculpatory evidence does not amount to a "willingness to affirmatively distort truth." Wilson, 212 F. 3d at 788. Plaintiff's amendments thus fail to support a claim that

12

defendants Holder and Munday fabricated plaintiff's inculpatory statements "with a high degree of awareness of [the statements] probable falsity." <u>Miller</u>, 475 F.3d at 627.

As "the proposed [amendments] fail[ ] to state a claim under the applicable rules and accompanying standards," the proposed amendments are futile. <u>Katyle</u>, 637 F.3d at 471. Accordingly, the court denies plaintiff's motion for leave to amend.

## CONCLUSION

Based on the foregoing, plaintiff's motion to modify order or for leave to amend complaint (DE 47) is DENIED.

SO ORDERED, this the 3rd day of February, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge